# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>MARGERY KANAMU-<br>KALEHUANANI KEKAUOHA-<br>ALISA<br><br>Debtor. | Case No. 05-01215<br>Chapter 7 |
| MARGERY KANAMU-<br>KALEHUANANI KEKAUOHA-<br>ALISA,<br><br>               Plaintiff,<br>   vs.<br><br>AMERIQUEST MORTGAGE<br>COMPANY; WM SPECIALTY<br>MORTGAGE LLC, WITHOUT<br>RECOURSE,<br><br>Defendants. | Adversary Proceeding  No. 06-90041<br><br>Related Docket Nos.:  73, 76 & 93 |

## MEMORANDUM OF DECISION
## ON MOTIONS FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

The chief question is whether a mortgagee enforcing a power of sale must

provide written notice to the mortgagor when a previously noticed foreclosure sale

is postponed.  I conclude that oral announcement of postponement at the scheduled

time and place of the continued auction is sufficient under the applicable statute and the mortgage.  I also conclude, however, that there are triable questions of fact concerning whether the defendants properly effected the nonjudicial foreclosure sale.


## II.    FACTS

The debtor, Margery Kanamu-Kalehuanani Kekauoha-Alisa, owned a home in Paauilo on Hawaii Island.  In 2002, the debtor took out a $127,500 loan payable to Ameriquest Mortgage Co. ("Ameriquest") and secured by a first mortgage on the home.

In January 2005, Ameriquest notified the debtor that she was in default on the loan.  Ameriquest threatened to foreclose the mortgage if the debtor did not cure the default by February 8, 2005.  The debtor did not cure, and Ameriquest began nonjudicial foreclosure under a power of sale in the mortgage, scheduling an auction for May 13, 2005.

Three days before the auction, the debtor filed a chapter 13 petition.  On her schedules, she estimated the value of the Paauilo home at $350,000.  She claimed a $4,180 exemption against the property pursuant to 11 U.S.C. § 522(d)(5) in an amended Schedule C filed in August 2005, and amended the exemption amount to

2

$680 the following month. AMC Mortgage Services, Inc., as loan servicer for Ameriquest, filed a secured claim of $138,540.78.

In order to avoid violating the automatic stay, Ameriquest postponed the foreclosure auction five times.

The court confirmed the debtor's chapter 13 plan on July 8, 2005. The plan provided for payment of the mortgage arrears through the plan and payment of post-petition mortgage payments outside the plan. The debtor failed to keep up with her post-petition mortgage payments, however, and on November 1, 2005, Ameriquest moved for relief from the automatic stay to complete the foreclosure. The debtor did not oppose the motion and the court granted the relief on November 21, 2005.

Ameriquest held the foreclosure auction on December 2, 2005. WM Specialty, LLC ("WM Specialty") made the only bid, in the amount of $147,606.17. The debtor's outstanding obligation on the mortgage loan was $147,506.17 plus any outstanding fees and costs.

On December 21, 2005, the debtor converted her case to chapter 7.

In January 2006, WM Specialty brought a state court ejectment action against the debtor and the tenants of the Paauilo property. The Third Circuit Court issued a judgment of possession and writ of possession for WM Specialty on April

3

11, 2006. The debtor's appeal of the Circuit Court's rulings is pending before the Hawaii Intermediate Court of Appeals.

### III. PROCEDURAL HISTORY

The debtor filed an adversary complaint against Ameriquest and WM Specialty on April 26, 2006, alleging violation of the automatic stay (Counts 1 though 3), breach of contract (Count 4), unfair and deceptive trade practices (Count 5), and violation of the Hawaii Uniform Fraudulent Transfer Act, Haw. Rev. Stat. ch. 651C (Count 6); and requesting injunctive relief (Count 7). The court granted summary judgment for the defendants on the stay violation counts on December 15, 2006. The court also granted the debtor leave to amend her complaint to add counts for turnover of property of the estate pursuant to 11 U.S.C. §§ 542 and 543, and avoidance of sale or transfer (Counts 8 and 9, respectively, in the amended complaint).

The debtor now moves for summary judgment on Counts 4 (breach of contract) and 9 (avoidance) of the amended complaint. Ameriquest and WM Specialty move for summary judgment in their favor on all counts surviving the earlier round of summary judgment motions (Counts 4 through 9), and the debtor countermoves for summary judgment on Count 5 (unfair and deceptive trade

4

practices).[1]


## IV. STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir.1989).


## V. DISCUSSION

A.    Was Ameriquest Obligated to Give the Debtor Written Notice of the Postponement of the Auction?

The debtor argues that the mortgage and the applicable statute required Ameriquest to give her written notice of the postponement of the auction.  The debtor supports this contention with several subsidiary arguments.

---

[1] The court heard the motions on April 27, 2007.  Bradley Tamm, Esq., and Lissa Shults, Esq., appeared for the debtor.  Jade Ching, Esq., and Shellie Park-Hoapili, Esq., appeared for Ameriquest and WM Specialty.  The court took the motions under advisement.

5

*1.    Which Statute Applies?*

The debtor first argues that the mortgage required Ameriquest to proceed under the newer of Hawaii's two nonjudicial foreclosure statutes. This is important because the new statute expressly requires the foreclosing lender to give the mortgagor written notice of postponement.

Hawaii has two sets of statutes permitting the foreclosure of real estate mortgages without judicial action. Ameriquest elected to proceed against the Paauilo property under the oldest of these two statutes, Part I of Haw. Rev. Stat. Ch. 667. The principal provision, section 667-5, has been in effect without significant change since 1874. Haw. Sess. L. Ch. XXXIII § 1 (1874). It provides that when a mortgage contains a power of sale, the mortgagee may give notice of its intention to foreclose by publication of three successive weekly notices in a newspaper of general circulation in the same county as the property to be sold, with the last publication at least 14 days before the date of sale. The mortgagee also must "give such notices and do all such acts as are authorized or required by the power contained in the mortgage."

Under section 667-5, any properly noticed sale "may be postponed from time to time by public announcement made by the mortgagee or by some person acting on the mortgagee's behalf."

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 127   Filed  06/15/07   Page 6 of 28

In 1998, the legislature enacted a new nonjudicial foreclosure process set forth in Part II of Haw. Rev. Stat. ch. 667, sections 667-21 through 667-42. Part II is far more specific and comprehensive, and is more consumer-friendly, than Part I. The legislature did not, however, repeal Part I of chapter 667; instead, the legislature termed the new law an "alternate" power of sale foreclosure process. Haw. Rev. Stat. § 667-21.

Like the old law, the new law provides that a sale of mortgaged property may be postponed by the foreclosing mortgagee. § 667-28. Notice of postponement "shall be announced by the foreclosing mortgagee at the date, time, and place of the last scheduled public sale." § 667-28(a). Unlike the older law, however, section 667-28(b) also explicitly requires publication and delivery to the mortgagor of a new notice of sale in the event of postponement.

The debtor acknowledges that the mortgage does not expressly say whether the mortgagee must exercise the power of sale pursuant to the new or old law. She submits that the mortgage is ambiguous on this point, however, and that this ambiguity must be construed against the mortgagee as drafter of the document. State Sav. & Loan Ass'n v. Kauaian Dev. Co., Inc., 62 Haw. 188, 198 (1980)("It is a fundamental rule that any ambiguity in a mortgage instrument should be construed against the party drawing the documents."). According to the debtor, the

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 127   Filed  06/15/07   Page 7 of 28

mortgage construed in her favor would require Ameriquest to proceed under the statute which is more favorable to her.

A contract is ambiguous "when the terms of the contract are reasonably susceptible to more than one meaning." Airgo, Inc. v. Horizon Cargo Transport, Inc., 66 Haw. 590, 594 (1983).

Section 22 of the mortgage authorizes the lender to "invoke the power of sale and any other remedies permitted by Applicable Law" upon the borrower's failure to cure a default within a specified time. The mortgage defines "Applicable Law" as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."

The mortgage cannot reasonably be interpreted to require Ameriquest to proceed under the new nonjudicial foreclosure statute. Section 22 permitted Ameriquest to exercise the power of sale under any applicable statute. "[T]he fundamental principle that any ambiguities in a contract should be interpreted most strongly against the party who has drafted the language is applicable only where a contract is open to more than one reasonable construction." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 110 n. 5 (1992).

I therefore conclude as a matter of law that Ameriquest did not breach the

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 127   Filed  06/15/07   Page 8 of 28

mortgage contract by proceeding under the old nonjudicial foreclosure statute.


> 2.      *Does the Old Statute Require Written Notice of Postponement?*

The debtor argues that Ameriquest was obligated to give her written notice of the postponed auction. Ameriquest announced the original sale date in writing, but gave no written notice of the postponement to anyone.

Haw. Rev. Stat. § 667-5 does not expressly require a foreclosing mortgagee to provide the mortgagor with written notice of the new auction time and date when a previously noticed auction is postponed.

Under section 667-5, "Any sale, of which notice has been given as aforesaid, may be postponed from time to time by public announcement made by the mortgagee or by some person acting on the mortgagee's behalf."

The word "announcement" is not defined in Haw. Rev. Stat. ch. 667. Merriam-Webster's defines "announce" as "to make known publicly: PROCLAIM" and "announcement" as " public notification or declaration." Merriam-Webster's Collegiate Dictionary 47 (10th ed. 2001). Nothing in these definitions suggests that a "public announcement" must be written rather than oral.

The new alternate nonjudicial foreclosure law also provides a window into legislative thinking on the subject. Section 667-28(a) provides that notice of

9

postponement "shall be announced by the foreclosing mortgagee at the date, time, and place of the last scheduled public sale." Section 667-28(b) further provides that if there is a postponement a new notice "shall be published . . ." and "shall be mailed or delivered" to the mortgagor and any other person entitled to receive the original notice of sale.

The new statute thus requires both an "announcement" and written notice of a postponement. The legislature did not, however, amend the old statute, which requires only a "public announcement." If lawmakers had intended to require republication and redelivery of written notice upon postponement of a sale under the older section 667-5, they would have amended the old statute to say so.

Therefore, I conclude that, under section 667-5, oral announcement of postponement at the scheduled time and place of the continued auction is sufficient unless the mortgage agreement requires more extensive notice than that.


3.      *Does the Mortgage Require Written Notice of Postponement?*

Section 22 of the mortgage provides that if the lender invokes the power of sale, it "shall give Borrower notice of sale in the manner provided in Section 15." Section 15 in turn requires that, "All notices given by Borrower or Lender in connection with this Security Instrument must be in writing." Section 15 also

10

provides, however, that, "If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument."

Under section 22, the mortgagee "shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale."

The mortgage does not directly say what, if any, type of notification must be provided in the event a previously noticed sale is postponed. The debtor argues that the mortgagee must sell the property "at the time . . . specified in the notice of sale" and that, if the sale is postponed and not made at the initially specified time, the mortgagee must give another written notice.

Ameriquest's notice of intent to foreclose unambiguously stated that "this sale may be postponed from time to time by public announcement made by Mortgagee or someone acting on Mortgagee's behalf." For purposes of section 22, the "time specified" for the sale is not only initial date of the auction, but also any publicly announced postponed date. The notice plainly provided that the sale could be postponed by public announcement. If it held the sale on a date postponed by such announcement, Ameriquest did not violate this requirement.

Accordingly, I conclude that as a matter of law Ameriquest did not violate

11

the notice requirements of the power of sale by failing to provide the debtor with separate written notice of the sale postponements.

B.    Was the Content of the Oral Postponement Announcements Sufficient?

Ameriquest submitted evidence that its representatives announced the postponement of each of the five scheduled auctions prior to December 2, 2005, by "public declaration" at the time and place of the continued sale.  The debtor argues, however, that meaningful oral announcements of the postponements were not made.

The debtor refers to "postponement scripts" that were produced in discovery and claims that they provided insufficient information.  There is no evidence that these postponement scripts were actually read when the sale of the debtor's property was postponed.  Any deficiency in the scripts is therefore immaterial.

In a supplemental opposition filed after oral argument on the present motions, the debtor submitted evidence that no public oral announcement was made at the final postponement.  Accordingly, a genuine issue of material fact exists as to whether Ameriquest fulfilled this requirement.

12

C.    Did Ameriquest Improperly Impose an Upset Price?

The complaint alleges that Ameriquest breached its obligation under section 22 of the mortgage to "sell the Property . . . under the terms specified in the notice of sale."  The debtor alleges that Ameriquest conducted the December 2, 2005, auction with an upset price, contrary to the terms of sale.  This claim is based on an interrogatory response by WM Specialty stating that,

> the directed/opening bid price for the Property was $147,606.17. . . .
> At the December 2, 2005 auction, no bidder was present.  Therefore,
> the Property reverted to WM Specialty, as the
> investor/owner/beneficiary of the loan for the Property, for the
> directed bid amount of $147,606.17.

This response does not establish that there was an upset price.  An opening bid is not the equivalent of an upset price.  There is nothing improper about the mortgagee making the opening bid.  The meaning of the term "directed" in the interrogatory response may be unclear, but the debtor has not presented evidence sufficient to create a genuine issue of material fact as to whether the term indeed refers to an upset price.

I therefore conclude that as a matter of law Ameriquest did not breach the mortgage contract by improperly imposing an upset price.

13

D.    Who Was Entitled to Foreclose the Mortgage and Make a Credit Bid at the Auction?

The debtor makes two arguments based on the uncertain ownership status of the note and mortgage during the sale process.

Ameriquest is identified as the foreclosing mortgagee in the recorded and published notice of intent to foreclose, in the mortgagee's affidavit of foreclosure, and in the quitclaim deed conveying the Paauilo property to WM Specialty. Ameriquest sought the relief from the automatic stay that enabled it to conduct the foreclosure sale.  It was WM Specialty, not Ameriquest, however, that made the credit bid at the auction.  The terms of sale only allowed the mortgagee to credit bid.

In response to the debtor's discovery requests, Ameriquest disclosed that on April 6, 2005, it executed (but did not record) an "assignment of deed of trust" assigning to WM Specialty "all beneficial interest" under the debtor's note and mortgage.  In response to interrogatories, WM Specialty stated that it "purchased the loan for the [Paauilo] property . . . from Ameriquest, and therefore, was the investor/owner/beneficiary of the loan for the Property; Ameriquest retained servicing of the loan.  As the servicer, Ameriquest commenced the nonjudicial foreclosure and conducted the auction on WM Specialty's behalf."  In moving papers and oral argument for the instant motions, however, the defendants

14

maintained that the assignment transferred only a beneficial, or equitable, interest in the instruments to WM Specialty and that Ameriquest retained bare legal ownership.

The debtor argues that the assignment absolutely transferred the note and mortgage to WM Specialty, that the "beneficial interest" terminology simply reflects the fact that the assignment incorrectly refers to the security instrument as a deed of trust rather than as a mortgage, and that because Ameriquest was not the mortgagee, it was not entitled to foreclose. Alternatively, the debtor argues that if the assignment did transfer only a beneficial interest to WM Specialty, then WM Specialty was not entitled to make a credit bid at the sale.

Ameriquest would not have authority to foreclose if it absolutely transferred its interest in the note and mortgage and was not the assignee's agent. Hawaii law is clear that a mortgagee may exercise the power of sale through an agent or designee. Section 667-5 provides that a power of sale may be enforced by "the mortgagee, or the mortgagee's successor in interest," and a foreclosure sale may be postponed by public announcement made "by the mortgagee or by some person acting on the mortgagee's behalf." Section 667-7 further provides that the affidavit of foreclosure "may lawfully be made by any person duly authorized to act for the mortgagee, and in such capacity conducting the foreclosure."

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 127   Filed 06/15/07   Page 15 of 28

In <u>Wailuku Sugar Co. v. Dean</u>, 8 Haw. 108 (Haw.King. 1890), the Supreme Court of the Kingdom of Hawaii also stated that it did not read the predecessor to section 667-5 "as expressly requiring that certain acts be done by the mortgagee personally or any assign personally, and implying that the things done shall be invalid if done for him or on his behalf by another person."  8 Haw. at 108.  The court observed that "powers of sale are construed liberally for the purpose of effecting their general object" and that "it would be an illiberal construction to hold that the acts of this business could only be validly done by the mortgagees in person."  5 Haw. at 109.  (Citing Story's Equity Jurisprudence, § 1027A.)

The record is insufficient to permit a conclusion that Ameriquest had authority to foreclose the mortgage.  The only evidence of an agency relationship consists of the interrogatory responses in which WM Specialty stated that "Ameriquest retained servicing of the loan . . . ."  The issue should be further developed at trial.

Similarly, the record is not sufficiently developed for the court to determine as a matter of law whether the credit bid was proper.  Neither the mortgage nor the terms of sale directly addresses whether a party possessing merely an equitable interest in the mortgage has the requisite "mortgagee" status to enable it to bypass the cash bid requirement.

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 127   Filed  06/15/07   Page 16 of 28

There are also unanswered questions about whether any of these defects, if they exist, were material and what relief, if any, would be appropriate.

Because these questions should be resolved on the basis of a better-developed evidentiary record, I decline to grant summary judgment for either the debtor or the defendants on these issues.

      E.     Did Ameriquest Breach a Common Law Duty to Obtain the Best Possible Price?

The debtor also argues that Ameriquest breached an implied duty to exercise reasonable diligence to obtain the best possible price for the Paauilo property. Two Hawaii Supreme Court cases discuss this duty.

In <u>Silva v. Lopez</u>, 5 Haw. 262 (Haw.King. 1884), a rancher defaulted on a loan secured by a real estate mortgage and a chattel mortgage of cattle, horses and equipment. The mortgagee sold both the land and chattels at an auction in the Honolulu city center. The mortgagor argued that auctioning the livestock in town where potential bidders could not inspect it breached an implied condition in the mortgage that the sale be conducted to the "highest advantage" of the mortgagor. 5 Haw. at 263. In holding that the auction of the personalty should have been held at the ranch, the court observed that "the law requires the mortgagee, in the exercise of his power, to use discretion in an intelligent and reasonable manner, not to

17

oppress the debtor or to sacrifice his estate." 5 Haw. at 265.

Ulrich v. Security Inv. Co., 35 Haw. 158 (Haw.Terr. 1939), involved a
Honolulu attorney who owed $1,500 to his law partner, secured by a chattel
mortgage assigning the borrower's interest in the general partnership and his one-
half interest in all fees to be earned by the firm. The creditor-partner exercised a
power of sale in the mortgage and held an auction where he sold the partnership
interest to himself for $250 and sold the unearned fees to a nominee for $100. The
foreclosing partner did not disclose prior to the auction that the law firm held a
claim for fees with an estimated value of $200,000 in a case on which the
mortgagor-partner had worked for more than a decade. 35 Haw. at 166, 173. The
Supreme Court observed that the "legal duties imposed upon the mortgagee
required it to use all fair and reasonable means in obtaining the best prices for the
property on sale." 35 Haw. at 168. Because the foreclosing partner took
"wrongful and unfair advantage" of his partner, the court held that the sale must be
set aside. Id.

The debtor has not shown conduct by either of the defendants that
approaches the unreasonableness of the mortgagee's actions in Silva or the
"wrongful and unfair advantage" taken by the mortgagee in Ulrich. There is no
evidence that Ameriquest tried to keep the sale secret as in Ulrich, or that it

18

departed from customary sales practices and failed to give purchasers adequate information about the assets being sold, as in <u>Silva</u>.

The debtor has therefore failed to establish that either defendant violated an implied duty of reasonable diligence or acted in bad faith.[2]

F.    Was Ameriquest's Affidavit Sufficient, and, If Not, What is the Consequence?

The debtor argues that Ameriquest did not file an affidavit "setting forth the mortgagee's acts in the premises fully and particularly . . . " as Haw. Rev. Stat. § 667-5 requires.

Alleged insufficiencies or defects in the affidavit include the following:

- the affidavit does not provide the dates of service, recordation, publication and posting of the notice of intent to foreclose;

- it makes no mention of the sale postponements by public announcement and merely states that the auction occurred "[u]pon the scheduled date, time and place";

- it does not disclose the successful bid price;

- it does not indicate whether the notice of intent was filed with the state director of taxation;

_____

[2] If Ameriquest fails to establish that it satisfied the applicable statutory notice requirements, that would provide an independently sufficient basis to set aside the sale.

19

- the published and recorded notices of intent were executed and notarized on different dates; and,

- because of missing exhibits, the affidavit fails to establish that the notice of intent was timely posted at the property, filed with the state director of taxation, and mailed to the debtor.[3]

The defendants' argument did not address the significance of the missing exhibits.

There are no reported Hawaii decisions that discuss the meaning of "fully and particularly" as that phrase is used in section 667-5.  The debtor urges the court to look to the new nonjudicial foreclosure statute as a guide.  Section 667-32 specifically prescribes the information that must be included in the affidavit, including time and location of the sale; the dates the notice of sale was served on the required parties, published,  recorded, and posted; and the identity of the successful bidder and the highest bid price.

The affidavit of foreclosure in this case leaves much to be desired.  I am not

_____

[3] Although section 667-5 does not require the mortgagee to mail the notice of intent to the debtor, it does require the mortgagee to "give such notices . . . as are authorized or required by the power contained in the mortgage."  Section 22 of the mortgage requires written "notice of sale . . . " Ameriquest submitted evidence that it mailed a "notice of intention to foreclose" to the debtor on January 4, 2005, but that notice did not provide a sale date.  The January letter therefore does not constitute "notice of sale" as required under section 22 of the mortgage.  Because of the missing exhibits, the affidavit of foreclosure does not establish that the April notice – which included a sale date – was mailed to the debtor.

20

persuaded, however, that a foreclosure sale can be set aside simply because the affidavit is insufficient, if the mortgagee proves by other means that it complied with the statute and the mortgage. The affidavit serves an evidentiary function only. Section 667-8 provides that a proper affidavit which makes such a showing "shall be admitted as evidence that the power of sale was duly executed." Nothing in the statute precludes a mortgagee from submitting other evidence that the sale was duly executed. Indeed, in discussing the comparable provision of the predecessor to section 667-5 in Wailuku Sugar, the Supreme Court approvingly cited Field v. Gooding, 106 Mass. 310, 312-13 (1871), for the proposition that,

> the title passes by the sale and deed and immediately vests in the purchase; that it was not the intention to make [the purchaser's title] subject to a condition subsequent and liable to be defeated by a failure of the mortgagee to perform an act which must follow the conveyance in point of time; that it must be regarded as directory and not precluding a resort to other evidence that the power of sale was duly executed . . . .

8 Haw. at 108. Field further explained that Massachusetts' affidavit provision was "intended to secure the preservation of evidence that the conditions of the power of sale named in the deed have been complied with. It is for the protection of those claiming under the sale, and to prevent litigation." 106 Mass. at 312.

The debtor argues that the parol evidence rule applies to the affidavit and prevents the defendants from introducing extrinsic evidence to vary its meaning or

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 127   Filed  06/15/07   Page 21 of 28

effect.  Contrary to its name, however, the parol evidence rule is not a rule of evidence but rather is a substantive rule of contract interpretation.  <u>In re Kealoha</u>, 2 B.R. 201, 209 (Bankr. D. Hawaii 1980).  As noted above, the affidavit of completion is evidence that the mortgagee properly exercised a power of sale.  It is not a contract or similar document to which the parol evidence rule applies.

The alleged deficiencies in the affidavit, standing alone, would not justify setting aside the sale.  Because there are material issues of fact as to whether Ameriquest complied with the applicable statutory requirements, summary judgment on this aspect of the avoidance claim is inappropriate.

G.    Unfair and Deceptive Trade Practices

The debtor and the defendants both move for summary judgment on the debtor's claim that the defendants engaged in unfair and deceptive trade practices under Haw. Rev. Stat. § 480-2.  The claim is based on the failure of either defendant to take action to notify the debtor of the December 2, 2005, auction; allegedly incomplete postponement announcements; alleged collusion between Ameriquest and WM Specialty to conceal the assignment of deed of trust prior to the foreclosure; Ameriquest's identification of itself as the foreclosing mortgagee despite having executed the assignment of deed of trust; and an argument that the

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 127   Filed  06/15/07   Page 22 of 28

auctioneer served as an undisclosed dual agent for both Ameriquest and WM Specialty by making a "directed/opening bid" on WM Specialty's behalf.

Haw. Rev. Stat. § 480-2(a) forbids "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." A practice is unfair "when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." State of Hawaii ex. rel. Bronster v. United States Steel Corp., 82 Haw. 32, 51 (1996)(quoting Rosa v. Johnston, 3 Haw.App. 420, 427 (1982)). A deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material. Courbat v. Dahana Ranch, Inc., 111 Haw. 254, 262 (2006)(citing Matter of Cliffdale Assocs., Inc., 103 F.T.C. 110, 165 (1984)). A representation, omission or practice is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." Id. The test "is an objective one, turning on whether the act or omission 'is likely to mislead consumers,' . . . as to information 'important to consumers' in making a decision regarding the product or service." 111 Haw. at 262. (Citations omitted.)

There are genuine issues of material fact concerning whether the defendants

23

complied with the mortgage and the foreclosure statute in carrying out the nonjudicial foreclosure sale. Even if the defendants did not comply with these requirements, however, it does not necessarily follow that they also violated section 480-2. Although I am doubtful that the debtor will be able to prove the kind of conduct that section 480-2 proscribes, it is appropriate to deny summary judgment on this claim until the questions about the defendants' conduct are resolved.

H.    Fraudulent Transfer

The defendants seek summary judgment on the debtor's claim that the transfer of the Paauilo property to WM Specialty was an avoidable fraudulent transfer under Haw. Rev. Stat. ch. 651C.

Chapter 651C gives avoidance powers only to a "creditor." Haw. Rev. Stat. § 651C-7. A "creditor" is "a person who has a claim against a debtor" and a "claim" is "a right to payment . . . ." Haw. Rev. Stat. § 651C-1. A "valid, presently enforceable debt against [the] original transferor" is an essential element of an action against the transferee to set aside a fraudulent transfer. TSA Intern. Ltd. v. Shimizu Corp., 92 Haw. 243, 262-63 (1999)(citing Jahner v. Jacob, 515 N.W.2d 183, 185 (N.D. 1994)). Thus, the debtor could maintain an action under

24

chapter 651C only if she is a creditor of herself, meaning that she has a right to payment from herself.

The debtor contends that her exemption rights in the Paauilo property give her standing to employ chapter 651C. She is mistaken. The allowance of an exemption simply removes some property from the bankruptcy estate and vests the property in the debtor. "[I]f a debtor claims certain property as exempt, the claim of exemption is not challenged by the trustee or a creditor within a fixed period of time, and the court-determined value of the property is equal to or less than the exemption, the property which is claimed as exempt is carved out of the estate and is no longer property of the bankruptcy estate." In re Elia, 198 B.R. 588, 601 (Bankr. D. Ariz. 1996). An exemption does not give the debtor a right to payment from herself, and does not make her a creditor of herself.

Because the debtor cannot establish the elements of fraudulent transfer under Hawaii law, the defendants are entitled to summary judgment on this claim.

I.      Injunctive Relief

The defendants seek summary judgment on the debtor's request for injunctive relief. To the extent the debtor's claims do not survive summary judgment, there can be no relief, equitable or otherwise. However, the possibility

25

of injunctive relief should be preserved for those claims which survive summary judgment. Accordingly, I will deny summary judgment on the debtor's request for injunctive relief.

J.      Turnover

The complaint alleges that WM Specialty actually paid Ameriquest $229,631.52, and that Ameriquest is holding the more than $83,000 in "surplus proceeds" from the December 2, 2005, sale. The complaint notes the debtor's exemption and asks the court to order Ameriquest to turn over all surplus proceeds to the trustee and account for the value of the surplus pursuant to 11 U.S.C. §§ 542 and 543.

The defendants state that allegation of surplus proceeds is based entirely on an inaccurate quote of the purchase price by defendants' counsel which was promptly corrected in e-mail settlement communications with the debtor's counsel in October 2006.

The defendants have submitted sworn statements and a certificate of sale at public auction showing that the property sold to WM Specialty for $147,606.17. There is no evidence that there was $83,000 in surplus proceeds other than the retracted e-mail from the defendants' counsel. Accordingly, there is no genuine

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 127   Filed 06/15/07   Page 26 of 28

issue of material fact that the purchase price was $147,606.17.

The debtor, however, argues that because the $147,606.17 purchase price was $100 more than the stated amount owing on the mortgage on the date the property was sold, there is a triable issue that surplus proceeds exist. The defendants note that the mortgage also secured costs incurred in the foreclosure sale, and they submitted the declaration of a foreclosure liaison for Ameriquest agent AMC Mortgage stating that costs of $100 were incurred in connection with the auction. Ameriquest has not submitted receipts or invoices to document its expenses, however.[4]

Although the facts strongly suggest that there were no surplus proceeds from the December 2, 2005, auction, and it is disconcerting to say the least to think that further proceedings should be had over such a small amount, summary judgment

---

[4] The debtor argues that the foreclosure costs must be paid by the purchaser under the terms of sale. The argument is not persuasive. Section 22 of the mortgage provides that the mortgagee "shall be entitled to collect all expenses incurred in pursuing the remedies afforded in this [section], including, but not limited to, reasonable attorneys' fees and costs of title evidence." The terms of sale in the notice of intent state that the mortgagee's quitclaim conveyance shall be provided within 21 days of the sale "and upon payment by the Purchaser of all costs related to sale, including, but not limited to: costs of drafting the conveyance document, notary fees, consent fees, escrow fees, conveyance tax, recordation fees and prorated charges, together with any special assessments . . . " The terms of sale clearly refer to the costs of effecting the conveyance after the auction sale has occurred, and not the costs incurred in bringing the property to auction.

27

on this count is inappropriate because Ameriquest has not fully substantiated the claim that it incurred at least $100 in costs in exercising its power of sale.

## VI.   CONCLUSION

Based on the above, summary judgment is granted for the defendants on Count 6 (fraudulent transfer).  The defendants' motion for summary judgment is denied as to Count 5 (unfair and deceptive trade practices), Count 7 (injunctive relief) and Count 8 (turnover).  The debtor's and the defendants' motions for summary judgment on Counts 4 (breach of contract) and 9 (avoidance) are denied.

*/s/ Robert J. Faris*
**United States Bankruptcy Judge**
Dated: **06/15/2007**

28