# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>MARGERY KANAMU-<br>KALEHUANANI KEKAUOHA-<br>ALISA,<br><br>Debtor. | Case No. 05-01215<br>Chapter 7 |
| MARGERY KANAMU-<br>KALEHUANANI KEKAUOHA-<br>ALISA,<br><br>Plaintiff,<br>vs.<br><br>AMERIQUEST MORTGAGE<br>COMPANY; WM SPECIALTY<br>MORTGAGE LLC, WITHOUT<br>RECOURSE,<br><br>Defendants. | Adversary Proceeding  No. 06-90041<br><br>Related Docket No.: 267 |

## MEMORANDUM OF DECISION ON MOTION TO ALTER OR AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW AND JUDGMENT

The plaintiff has moved the court to alter or amend its findings of fact, conclusions of law, and judgment.  The plaintiff has identified certain errors in my reasoning.  Therefore, for the reasons stated below, I will enter amended findings

of fact and an amended judgment.  To help the parties locate the amendments, redlined versions of the amended documents are attached to this decision.

1.      The plaintiff correctly points out that I erred in computing her damages.  Because the judgment avoids the foreclosure sale and restores the Mortgaged Property to the plaintiff, I did not include in the award of money damages the value of her lost equity in the property.  This calculation was incorrect because it deprives the plaintiff of treble damages to which she is entitled under Haw. Rev. Stat. § 480-13.

If the plaintiff had no claim other than her claim for unfair and deceptive acts and practices under section 480-2, her damages would consist of her lost equity in the property, the lost rental value of the property, and legal fees incurred in state court in an attempt to resist the foreclosure.  Under section 480-13, she would be entitled to recover threefold this amount.

The judgment is incorrect because it allowed the plaintiff to recover the equity in the property only once – in kind, by way of avoidance of the foreclosure – rather than three times as the statute allows.

2.      I do not, however, agree with the plaintiff that she is entitled to include in her damages the entire value of the property, not just the value of her equity.  The plaintiff correctly states that "Plaintiff's measure of damages under

2

Chapter 480 is to be placed in the same position she would have been but for Defendants' unfair and deceptive conduct." (Docket no. 267 at 10.) Leibert v. Finance Factors, Ltd., 71 Haw. 285, 290, 788 P.2d 833, 836 (1990). In this case, before the defendants' wrongful conduct, the plaintiff owned a home worth $300,000 subject to a mortgage of about $150,000. The amount needed to restore her to the status quo ante is equal to the value of her interest in the Mortgaged Property (about $150,000). Awarding her the entire the value of the unencumbered property would make her better off than she was before the wrongs occurred.[1]

Davis v. Wholesale Motors, Inc., 86 Haw. 405, 949 P.2d 1026 (Haw. App. 1997), is not to the contrary. In that case, a consumer purchased a new car from an automobile dealer and traded in his old car. Disputes arose. The consumer sued the dealer for unfair and deceptive acts, breach of contract, conversion, and other claims. The dealer counterclaimed against the consumer for fraud, breach of contract, and other claims. The trial court dismissed the consumer's chapter 480

---

[1]In addition, the plaintiff never before argued that her damages should include the unencumbered value of the property. Instead, in her written closing argument, the plaintiff argued that her award should be calculated by trebling $150,000 in lost-equity damages and also trebling some $36,000 in loss-of-use damages and expenses incurred in the state court ejectment action. See Pl.'s Closing Argument (Docket No. 240) at 85 ("Assuming total damages of $186,000, Plaintiff is entitled to three times that amount, or $558,000."). In re Greco, 113 B.R. 658, 664 (D. Haw. 1990), aff'd but remanded, 952 F.2d 406 (9th Cir. 1991)("[A] motion for reconsideration is not permitted . . . to assert new legal theories that could just as well have been raised before the initial hearing . . . .")

3

claims and the dealer's fraud claims, finding that each of them had defrauded the other, and awarded damages to the dealer on a breach of contract theory. The Intermediate Court of Appeals reversed, ruling that a consumer's wrongful conduct does not necessarily bar the consumer's chapter 480 claims. The court stated that, if the trial court found on remand that the consumer was entitled to recover under chapter 480, then the auto dealer's claim against the consumer should be applied as a setoff after the consumer's damages were trebled. The court reasoned that the contrary result would effectively treble the defendant's recovery on the counterclaim.

Davis points out that courts must avoid trebling the wrongdoer's offsets against the victim's claims. By the same token, however, trebling must be applied only to the plaintiff's actual damages, not to an amount that exceeds the plaintiff's true loss. This plaintiff's actual damages include the value of her interest in the property net of the valid encumbrance, not the unencumbered value of the property.

3.    The correct calculation of the plaintiff's damages requires me to determine the value of the Mortgaged Property and the amount secured by the Mortgage as of the date of the invalid foreclosure sale. The amended findings of fact cover these questions.

4. Plaintiff argues that she should be allowed to elect her remedies after the court makes its findings and conclusions but before the court enters judgment. The plaintiff made an unequivocal election of remedies in her closing argument ("Plaintiff hereby elect her remedies for each of her claims . . .", docket no. 240 at 74.) The amended findings of fact, conclusions of law, and judgment are consistent with that election. The plaintiff offers no authority for the startling proposition that, after making an express, unequivocal, and unconditional election of remedies, she is entitled to a do-over after judgment is entered.

5. The plaintiff argues that, rather than order the defendants to reconvey the Mortgaged Property to the plaintiff subject to all existing liens (including the Mortgage), the amount secured by the Mortgage should be set off against the plaintiff's judgment. I do not accept this argument. Enforcement of the judgment is currently stayed pending appeal, and the terms upon which the defendants can keep the stay in effect have been established (docket no. 315). Setting off the judgment and the Mortgage would disturb the status quo and therefore would be inconsistent with the stay pending appeal. The question of setoff should be addressed in connection with the enforcement of the judgment, after the stay is terminated.

6. Finally, I have clarified conclusion of law 28 as the plaintiff suggests

5

and made other amendments which should be self-explanatory.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **09/02/2008**

6

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>MARGERY KANAMU-<br>KALEHUANANI KEKAUOHA-<br>ALISA,<br><br>　　　　　　Debtor. | Case No. 05-01215<br>Chapter 7 |
| MARGERY KANAMU-<br>KALEHUANANI KEKAUOHA-<br>ALISA,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>AMERIQUEST MORTGAGE<br>COMPANY; WM SPECIALTY<br>MORTGAGE LLC, WITHOUT<br>RECOURSE,<br><br>　　　　　　Defendants. | Adversary Proceeding  No. 06-90041 |

## **AMENDED** FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial in this adversary proceeding was held on April 7, 9, 10, 14, and 15, 2008.  Bradley R. Tamm and Lissa D. Shults represented the plaintiff and Tina L. Colman and Shellie Park-Hoapili represented the defendants.  Based on the evidence, I make the following

## FINDINGS OF FACT

1.      In 1996, the debtor, Margery Kanamu-Kalehuanani Kekauoha-Alisa, and her husband (since deceased) purchased a home in Paauilo on Hawaii Island (the "Mortgaged Property").

2.      On September 23, 2002, the debtor executed a promissory note and mortgage (the "Mortgage") in favor of Ameriquest Mortgage Co. ("Ameriquest"). The Mortgage was recorded in the Bureau of Conveyances, State of Hawaii, and created a first mortgage lien on the Mortgaged Property.  (I will refer to the lender's rights under the note and Mortgage as the "loan.")

3.      Not later than April 6, 2005 (the record does not disclose the exact date), Ameriquest sold the loan to WM Specialty Mortgage LLC ("WM") and became WM's agent for the purpose of servicing the loan.  Subsequent to the sale, Ameriquest reorganized its operations, and one of its affiliates, AMC Mortgage Services, Inc. ("AMC"), undertook servicing of the loan.

    a.      Some of the evidence suggests that Washington Mutual Bank owned the loan at some point in time.  The weight of the evidence shows, however, that Ameriquest sold the loan directly to WM and that Washington Mutual Bank never owned it.  The references to Washington Mutual Bank appear to have crept in because Washington Mutual Bank is the manager of WM, a limited liability

2

company.

b.      There was no evidence that the internal reorganization pursuant to which Ameriquest delegated the servicing duty to AMC relieved Ameriquest of its legal obligation to WM to service the loan.

4.      The debtor defaulted in her obligations under the Mortgage on eight occasions.   On the eighth occasion, in early 2005, the debtor was not able to cure her defaults quickly enough to avoid foreclosure.

5.      On April 6, 2005, Ameriquest took some initial steps in the foreclosure process.

a.      Ameriquest (through AMC, purportedly acting as Ameriquest's "servicing agent") executed an "Assignment of Deed of Trust" in favor of "WM Specialty Mortgage LLC, Without Recourse."  The assignment purported to transfer "all beneficial interest" under a Deed of Trust executed by the debtor, and with the same date and recording information as the Mortgage.  The assignment was intended to document an absolute assignment of the mortgagee's interest under the Mortgage to WM.

b.      Town & Country Title Services, Inc. ("T&C"), an affiliate of Ameriquest, mailed to the debtor and to the State of Hawaii Department of Taxation a document entitled "Notice of Mortgagee's Intent to Foreclose under

3

Power of Sale" (the "April 6 Notice"). The notice stated that WM, the holder of the Mortgage, intended to hold a foreclosure sale on May 13, 2005, at the flagpole fronting Hale Halewai in Kailua-Kona.

        c.     Also on April 6, 2005 T&C sent the April 6 Notice and the Assignment of Deed of Trust to Fidelity National Title with instructions to record them.

     6.     On April 7, 2005, T&C received from Fidelity National Title a litigation guarantee in favor of Ameriquest, as mortgagee. A litigation guarantee is a type of title insurance policy issued to facilitate a foreclosure action.

     7.     On April 8, 2005, immediately after T&C received the litigation guarantee, Ameriquest and its affiliates retraced their steps. T&C mailed another Notice of Intention to Foreclose under Power of Sale (the "April 8 Notice") to the debtor and the State of Hawaii Department of Taxation and sent it to Fidelity National Title for recording in the Bureau of Conveyances. This notice described Ameriquest, rather than WM, as the foreclosing mortgagee.

     8.     On April 8, 2005, Ameriquest did not own the loan. AMC elected to pursue foreclosure in the name of Ameriquest in order to avoid the delay and expense of obtaining a new litigation guarantee in favor of WM, the true owner of the loan.

9.     The April 6 Notice and the assignment of mortgage were never recorded in the Bureau of Conveyances, posted on the Mortgaged Property, or published in a newspaper.  The April 8 Notice was recorded in the Bureau of Conveyances, posted on the Mortgaged Property, and published in a newspaper.

10.     On May 10, 2005, a few days before the scheduled foreclosure sale, the debtor filed a petition under chapter 13 of the Bankruptcy Code.

11.     AMC, "as loan servicer for Secured Creditor Ameriquest Mortgage Company," filed a proof of claim (and an amended proof of claim) in the bankruptcy case in respect of the loan.  Ameriquest was not the owner of the loan and was not a creditor of the debtor when these documents were filed.

12.     Fidelity National Agency Sales and Posting, Inc., apparently acting at the direction of T&C, retained an attorney to act as auctioneer.  In order to comply with the automatic stay, the auctioneer or another person with his law firm postponed the sale to June 17, August 26, September 2, September 23, and December 2, 2005.

13.     A legal secretary employed by the auctioneer's law firm was instructed to postpone the auction on September 23.  She went to the flagpole at Hale Halewai, the designated place of the auction, about ten or fifteen minutes before noon, the scheduled time of the auction, and stayed until about 12:25 p.m.

5

While she was there, she asked some of the people in the vicinity if they were attending the auction of the Mortgaged Property. All of the people she spoke to said they were not. She did not speak to everyone in the vicinity; there was another foreclosure auction scheduled at the same time, and she did not speak to anyone who seemed to be interested in the other auction. She never made an open, oral announcement to all those present of the date and time to which the auction was being postponed and she did not post or display such an announcement in written form. When asked at trial if she made a public announcement of the postponement, she testified that she did not.

14.    In the meantime, the court confirmed the debtor's chapter 13 plan on July 8, 2005. The plan provided for payment of the mortgage arrears through the plan and payment of post-petition mortgage payments outside the plan. The debtor failed, however, to maintain her post-petition mortgage payments.

15.    On November 1, 2005, "Ameriquest Mortgage Company, its Successors and Assigns," filed a motion for relief from the automatic stay to allow completion of the foreclosure. On that date, Ameriquest did not own the loan.

16.    The debtor's attorney in the bankruptcy case contacted the movant's attorney, a partner in the same law firm as the auctioneer, in an attempt to work out a plan to cure the defaults, but no agreement was reached.

6

17. The notice of the motion unambiguously stated that all responses to the motion were due within twelve days. The debtor did not oppose the motion. On November 18, 2005, several days after the expiration of the time for filing a response to the motion, the movant's counsel submitted to the court a proposed order granting the motion and informed the debtor's counsel that she had done so. The court entered the order on November 21, 2005. The debtor did not seek reconsideration of or other relief from the order until after the trial of this adversary proceeding.

18. At trial, the debtor's bankruptcy counsel testified that she did not file an opposition to the motion because, in her prior dealings with another attorney with the auctioneer's law firm, that attorney did not seek relief from the stay by default as long as they were attempting to negotiate a resolution. There is no evidence, however, that the debtor's counsel complained about a violation of such a course of dealing prior to the trial of this case. When the movant's counsel notified the debtor's counsel that she had submitted the order, the debtor's counsel did not object. In any event, counsel's reliance on any such course of dealing was not reasonable. The movant was entitled to the benefit of the deadline for objecting to the motion absent an express agreement to extend the deadline.

19. The foreclosure auction took place on December 2, 2005. The

7

auctioneer made the only bid, on behalf of WM, in the amount of $147,606.17.
This bid was made as a credit bid of the amount purportedly secured by the
Mortgage, not a cash bid. ~~The correct~~

20. On December 2, 2005, the fair market value of the Mortgaged
Property was $300,000.00, and the amount of the indebtedness ~~is disputed. The
debtor claims that the mortgagee failed to credit a payment and an~~secured by the
Mortgage was $144,219.17. (The debtor proved that the amount of the
indebtedness reflected in the credit bid was overstated because it included $100 of
unsubstantiated expenses and did not reflect credits to which the debtor was
entitled for a $2,000 postpetition payment and a $1,287 insurance premium refund
~~to her account. I need not resolve this dispute in light of my disposition of other
issues.~~)

21. On December 21, 2005, the debtor converted her case to chapter 7.

22. The April 8 Notice stated that the quitclaim deed conveying the
property to the successful bidder "shall be provided by Mortgagee within twenty-
one (21) days after sale . . . ." The quitclaim deed was dated December 21, 2005,
and recorded on December 27, 2005. In response to an interrogatory, Ameriquest
and WM stated that the quitclaim deed was "delivered" on December 27, 2005.

23. The quitclaim deed contains an internal inconsistency. The preamble

8

of the document identifies Ameriquest as the "foreclosing mortgagee" and the "Grantee" and WM as the "Grantor." This is incorrect; the labels "Grantee" and "Grantor" are reversed. Ameriquest signed the deed, however, as grantor. Further, Ameriquest did not own the Mortgage at that time.

24.     In January 2006, WM brought an ejectment action in state court against the debtor and the tenants of the Mortgaged Property. The debtor did not answer the complaint and did not respond to WM's motion for summary judgment. The state court issued a judgment of possession and writ of possession in favor of WM on April 11, 2006. The debtor's appeal of the state court's rulings is pending before the Hawaii Intermediate Court of Appeals. The debtor has incurred at least $12,000.00 of attorneys' fees and costs in the ejectment action and appeal.

25.     The fair rental value of the Mortgaged Property from April 2006 to date is $900 per month.

26.     The debtor suffered significant emotional distress as a consequence of her loss of the Mortgaged Property. She hoped to save the Mortgaged Property as a legacy from her late husband to her children, and the loss of this prospect was acutely and understandably painful. There is no question, however, that the Mortgage was in default and that the mortgagee was entitled to foreclose. The only question is whether the proper party foreclosed the Mortgage in the proper

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 322   Filed  09/03/08   Page 15 of 32

manner.  If the mortgagee had fully complied with all applicable requirements, the debtor would have suffered the same emotional distress that she actually suffered. There is no evidence that the mortgagee's errors in the foreclosure process, as opposed to the fact of the foreclosure itself, caused any additional emotional distress.

27.     The defendants' misconduct was not reckless and does not evidence callous disregard for the law or the rights of others.

Based on the foregoing findings of fact, the court draws the following

## CONCLUSIONS OF LAW

### A.     Jurisdiction

1.     The bankruptcy court has jurisdiction of the parties and the subject matter.

a.     The defendants do not object to personal jurisdiction.

b.     The defendants contended in their trial brief that the court lacked subject matter jurisdiction because the bankruptcy trustee, not the debtor, owned the claims asserted in this adversary proceeding.  At the beginning of the trial, the trustee and the debtor announced that they had reached an agreement (subject to court approval) pursuant to which the trustee would authorize the debtor to assert the claims.  The defendants' counsel acknowledged that this agreement

10

resolved the issue of subject matter jurisdiction. The court subsequently approved the agreement.

       c.      This is a core proceeding. 28 U.S.C. §§ 157(b)(2)(A), (E), (K), (O).

       **B.     Preclusion**

2.      The debtor is entitled to proceed despite the judgment against her in the state court ejectment action.

       a.      Under Hawaii law, a judgment has no preclusive effect until any appeals are decided. <u>Morisada Corp. v. Beidas</u>, 939 F.Supp. 732, 737 n. 3 (D. Haw. 1995); <u>Glover v. Fong</u>, 42 Haw. 560, 574 (Haw.Terr. 1958). Therefore, the state court's judgment has no issue preclusion or claim preclusion effects at this time.

       b.      The interest of comity is not sufficient, in the circumstances of this case, to justify deference to the judgment in the ejectment action.

         i.      Although not conclusive, it is relevant that the state court's judgment was, in effect, a default judgment against a bankrupt defendant.

         ii.     The complaint in this adversary proceeding asserts claims under federal law, some of which are within the exclusive jurisdiction of the bankruptcy court (<u>e.g.</u>, the claims for violation of the automatic stay, <u>Gruntz v.</u>

11

County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1084 (9th Cir. 2000)).

c.     When the state court entered judgment against the debtor, the estate, and not the debtor, owned the claims and defenses which the debtor now asserts.  Although the debtor acquired the right to assert those claims in time for the trial of this case, she did not have those claims when the state court entered judgment against her.  The debtor cannot be faulted, and cannot be subjected to preclusion or other prejudice, for failing to assert claims that she did not own.

### C.     Claims Remaining for Decision

3.     The debtor's amended complaint alleges violation of the automatic stay (Counts 1 though 3), breach of contract (Count 4), unfair and deceptive trade practices (Count 5), violation of the Hawaii Uniform Fraudulent Transfer Act, Haw. Rev. Stat. ch. 651C (Count 6); injunctive relief (Count 7), turnover of property of the estate pursuant to 11 U.S.C. §§ 542 and 543 (Count 8), and avoidance of sale or transfer (Count 9), and violation of the automatic stay by WM (Count 11).  (There is no Count 10 because I denied leave to add that count.)

4.     The court granted summary judgment for the defendants on Counts 1, 2 and 3 on December 15, 2006.

5.     The court granted summary judgment for the defendants on Count 6 (fraudulent transfer) on June 15, 2007.

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 322   Filed 09/03/08   Page 18 of 32

6.     The debtor moved (in her written closing argument) to conform the allegations of the complaint to the proof. I will deny this motion as unnecessary. All of the evidence and theories offered by the plaintiff are within the scope of the claims pled.

### D.     Violation of Nonjudicial Foreclosure Statute

7.     Ameriquest elected to foreclose the Mortgage under Part I of Haw. Rev. Stat. ch. 667. The principal provision, section 667-5, states that when a mortgage contains a power of sale, the mortgagee may give notice of its intention to foreclose by publication of three successive weekly notices in a newspaper of general circulation in the same county as the property to be sold, with the last publication at least 14 days before the date of sale. The mortgagee also must "give such notices and do all such acts as are authorized or required by the power contained in the mortgage."

8.     Under section 667-5, any properly noticed sale "may be postponed from time to time by public announcement made by the mortgagee or by some person acting on the mortgagee's behalf."

9.     The phrase "public announcement" is not defined in Haw. Rev. Stat. ch. 667. The dictionary defines "announce" as "to make known publicly: PROCLAIM" and "announcement" as " public notification or declaration."

13

<u>Merriam-Webster's Collegiate Dictionary</u> 47 (10th ed. 2001).

10.    No "public announcement" of postponement was made on September 23, 2005.  The legal secretary who appeared to postpone the auction made no oral or written announcement to the general public.  Instead, she spoke separately to some of the people in the area and did not speak to others who she did not think were there for her auction.  She was attempting to do the right thing, but she did not comply with the statutory requirement.

11.    The debtor argues that the foreclosing mortgagee violated the statute by tardily delivering the quitclaim deed to the purchaser.

a.    The statute does not impose a deadline for the conveyance of the property after the sale.  (Section 667-5 requires the mortgagee to record the notice of sale and an affidavit within thirty days after the sale, but says nothing about a conveyance document.)

b.    Section 667-5 does require the mortgagee to comply with the terms of the power of sale contained in the mortgage.  In this case, section 22 of the Mortgage requires the mortgagee to "sell the Property . . . under the terms specified in the notice of sale," and, as noted above, the April 8 Notice specified that the mortgagee would "provide" the quitclaim deed within twenty one days after the sale.

14

c.     Neither the Mortgage nor the April 8 Notice define the word "provide."  The interrogatory asked the defendants to state the date on which the deed was "delivered."  "Delivery" is a term of legal art; "provide" is not; and I have no basis to determine whether the two terms are synonymous.

d.     The debtor has failed to establish that the mortgagee violated the statute by providing the quitclaim deed too late.

e.     The debtor also argues that, because of the inconsistent identification of the "Grantor" and the "Grantee" in the quitclaim deed, no proper quitclaim deed has ever been delivered.  I am not convinced that the error in the deed entitles the debtor to any relief.  A scrivener's error of this nature could not have an adverse effect on a mortgagor.  See Steward v. Good, 51 Wash.App. 509, 515, 754 P.2d 150, 153-54 (1988).  In any event, because the mortgagee violated the statute by failing to give proper notice of the postponed sale, I need not reach this issue.

12.     The debtor argues that the mortgagee violated the statute by accepting an improper credit bid.  I have found that WM was the owner of the loan and the Mortgage.  Under the terms of the April 8 Notice, therefore, WM was entitled to make a credit bid.

## E.     Breach of Mortgage Contract

15

13.     Under Hawaii law, promissory notes and mortgages are contracts. Beneficial Hawaii, Inc. v. Kida, 96 Hawaii 289, 312, 30 P.3d 895, 918 (2001).

14.     Ameriquest was contractually bound to comply with Ssection 22 and other applicable provisions of the Mortgage.  When Ameriquest assigned the Mortgage to WM, WM also became contractually bound by the Mortgage, and Ameriquest was not released from its obligations under the Mortgage.

15.     Section 22 of the Mortgage required the mortgagee to comply with Applicable Law, including Hawaii Rev. Stat. § 667-5.  Ulrich v. Security Inv. Co., 35 Hawaii 158, 170-71 (1939) ("Where a power of sale is contained in a chattel mortgage the covenant is implied that, if exercised, the mortgagee will execute the power consistent with his legal duties in the premises.")  The defendants' violations of section 667-5 therefore also constitute breaches of contract.

16.     Section 14 of the Mortgage permits the lender to charge the borrower attorneys' fees incurred in connection with the borrower's default.  Hawaii law gives the borrower a reciprocal right to recover attorneys' fees in the event that the borrower is the prevailing party in litigation against the lender.  Haw. Rev. Stat. § 607-14; In re Hoopai, 369 B.R. 506, 510 (B.A.P. 9th Cir. 2007).

### F.     Avoidance of Foreclosure Sale

17.     The defendants' failure to comply strictly with the terms of the power

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 322   Filed  09/03/08   Page 22 of 32

of sale invalidates the foreclosure sale.  <u>Silva</u>, 5 Haw. at 263 ("To effect a valid

sale under power, all the directions of the power must be complied with . . . and

this is unquestioned.").

18.     Hawaii law does not require a mortgagor to show ability to cure in

order to set aside a sale that did not comply with the terms of the mortgage or

section 667-5.  The notice requirement in section 667-5 is intended, not only to

allow the mortgagor an opportunity to cure, but also to attract as many prospective

purchasers as reasonably possible in order to maximize the return of the

mortgagor's equity, if any.

19.     Accordingly, the debtor is entitled to an order setting aside the

foreclosure sale.

### G.     The Automatic Stay

20.     The November 21, 2005, order granting relief from the stay ran in

favor of any holder of the Mortgage, regardless of whether such holder was

specifically identified in the order.  <u>Reusser v. Wachovia Bank, N.A.</u>, 525 F.3d 855

(9th Cir. 2008).

21.     Accordingly, WM did not violate the automatic stay when it exercised

its rights with respect to the Mortgage.

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 322   Filed 09/03/08   Page 23 of 32

### H.    Unfair and Deceptive Trade Practices

22.    Haw. Rev. Stat. § 480-2(a) forbids "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

23.    Mortgage loans made by financial institutions to consumers are within the scope of section 480-2.  Hawaii Community Federal Credit Union v. Keka, 94 Hawaii 213, 227, 11 P.3d 1, 15 (2000).

24.    Section 480-2 is a remedial statute which "must be liberally construed in order to accomplish the purpose for which it was enacted."  Keka, 94 Haw. at 229, 11 P.3d at 17.  Chapter 480 creates "a mechanism for abating practices that potentially injure consumers in general."  Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawaii 309, 317, 47 P.3d 1222, 1230 (2002) (emphasis added).

25.    The failure properly to announce a postponement of a nonjudicial foreclosure sale is an "unfair act or practice" within the meaning of section 480-2.

    a.    An act or practice is unfair "when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  State of Hawaii ex. rel. Bronster v. United States Steel Corp., 82 Haw. 32, 51 (1996)(quoting Rosa v. Johnston, 3 Haw.App. 420, 427 (1982)).

    b.    There is an established public policy in favor of strict

18

compliance with the notice requirements of the nonjudicial foreclosure statute. <u>See</u> <u>Ulrich</u>, 35 Haw. at 172, <u>Silva v. Lopez</u>, 5 Haw. 262, 263-64 (1884).

        c.     The failure properly to announce a postponement of a foreclosure auction is "substantially injurious to consumers" in that it tends to deprive consumer/mortgagors of the benefit of their property and to deprive consumer/bidders of the ability to bid in foreclosure sales.

     26.    The failure properly to announce a postponement of a nonjudicial foreclosure sale is a "deceptive act or practice" under section 480-2.

        a.     A deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material. <u>Courbat v. Dahana Ranch, Inc.</u>, 111 Haw. 254, 262 (2006). A representation, omission or practice is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." <u>Id.</u> The test "is an objective one, turning on whether the act or omission 'is likely to mislead consumers,' . . . as to information 'important to consumers' in making a decision regarding the product or service." 111 Haw. at 262 (citations omitted.)

        b.     The failure to give a proper postponement announcement is an

19

"omission" or "practice."

        c.     The failure to give a proper postponement announcement is likely to mislead a consumer acting reasonably under the circumstances. A reasonable consumer (either a mortgagor or a prospective bidder) who appeared at the scheduled date and time of a foreclosure auction at which no public announcement of postponement was made would probably assume that the foreclosure had been canceled altogether and therefore would be deprived of the opportunity to participate in the postponed auction.

        d.     This omission or practice is material. Proper notice of the actual date of a foreclosure auction is essential to ensure that foreclosed properties bring adequate prices and that the public has an appropriate opportunity to bid.

       27.    Although a consumer must prove injury in fact in order to recover damages under section 480-2, the test for liability is an objective one. For example, in order to show that a particular act or practice is deceptive, the consumer need not show that he or she was deceived, but rather that a reasonable consumer would have been deceived. Therefore, for purposes of establishing the defendants' liability, it is not relevant that the debtor did not appear at the flagpole on September 23, 2005, when the public announcement of postponement should have been made.

20

## I.    Turnover

28.    The debtor alleges that the amount actually secured by the Mortgage on the date of the auction was less than the amount of WM's credit bid, and that WM must turn over the difference to the trustee in cash.  Because the foreclosure sale is void, WM's bid is inoperative and there is no basis to require WM to pay any part of that bid in cash.  Therefore, the ~~defendants are entitled to judgment on the~~ turnover count shall be dismissed as moot.

## J.    Remedies

29.    Breach of Contract.

a.    Because Ameriquest and WM failed to comply with the nonjudicial foreclosure statute and the power of sale contained in the Mortgage, the foreclosure sale is void.

b.

Text Was Moved From Here: 1

~~31.    Ameriquest and WM breached their contractual obligations under t~~The ~~Mortgage.~~  debtor has elected to forego any recovery of monetary damages under her breach of contract claims.

c.    The debtor is entitled to recover ~~the damages she suffered as a natural, proximate, and foreseeable result of those breaches.  These~~reasonable

21

attorneys' fees and costs under Haw. Rev. Stat. § 607-14.

      30.     Unfair or Deceptive Trade Acts or Practices.

      a.     Under Haw. Rev. Stat. § 480-13(b)(1), the debtor is entitled to "be awarded a sum not less that $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater . . . ."  For purposes of this section, the debtor's damages consist of the value of her lost equity in the Mortgaged Property ($155,780.83), the fair rental value of the Mortgaged Property ($900 per month for 26 months, or $23,400, plus an additional $900.00 per month from July 2008 until the debtor regains possession of the Mortgaged Property) and the attorneys' fees she incurred in the ejectment action in an effort to defend against the invalid foreclosure ($12,000), for total damages of $191,180.83 (plus $900 per month as set forth above) and a total treble damages amount of $573,542.49 (plus $2,700 per month as set forth above).

      b.     The debtor is not entitled to ~~a money judgment for~~an overlapping recovery on her various claims.  Avoidance of the foreclosure sale plus an award of treble damages would give the debtor a four-fold recovery of her lost equity in the Mortgaged Property ~~because the~~– once in kind, by way of the return of the Mortgaged Property to her, and three more times in the form of money damages – rather than the three-fold recovery permitted by Haw. Rev. Stat.

22

§ 480-13(b)(1). Therefore, the money judgment will be in the amount of $417,761.66 (plus $2,700 per month), which equals $573,542.49 (the total treble damages calculated above) minus $155,780.83 (the value of the equity in the Mortgaged Property, which she will recover "in kind" by avoidance of the foreclosure sale will restore her equity to her).

       c.     The debtor is entitled to recover costs and reasonable attorneys' fees under Haw. Rev. Stat. § 480-13(b)(1).

       d.     No damages for emotional distress will be awarded. The debtor failed to prove that the defendants' breaches (as opposed to the loss of the Mortgaged Property) caused her to suffer emotional distress. Further, emotional distress damages are not recoverable under Haw. Rev. Stat. § 480-13. <u>Zanakis-Pico</u>, 98 Haw. at 319, 47 P.3d at 1232.

       33.     The debtor is entitled to recover three times her actual damages under Haw. Rev. Stat. § 480-13(a)(1), or $106,200.00.

       e.     There will be no punitive damages because the debtor did not establish the requisite degree of culpability and because a plaintiff cannot recover both treble damages under section 480-13 and punitive damages. <u>Zanakis-Pico</u>, 98 Haw. at 319, 47 P.3d at 1232.

       31.     The

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 322   Filed  09/03/08   Page 29 of 32

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

In re:

MARGERY KANAMU-
KALEHUANANI KEKAUOHA-
ALISA,

Debtor.

Case No. 05-01215
Chapter 7

Adversary Proceeding  No. 06-90041

MARGERY KANAMU-
KALEHUANANI KEKAUOHA-
ALISA,

Plaintiff,

vs.

AMERIQUEST MORTGAGE
COMPANY; WM SPECIALTY
MORTGAGE LLC, WITHOUT
RECOURSE,

Defendants.

## AMENDED JUDGMENT

Pursuant to the Findings of Fact and Conclusions of Law filed this

day, IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1.    1.    Plaintiff Margery Kanamu-Kalehuanani Kekauoha-

Alisa ("Plaintiff") shall have judgment against defendants Ameriquest Mortgage

Co. ("Ameriquest") and WM Specialty Mortgage LLC ("WM") in the amount of

~~$106,200~~$417,761.~~00~~66, plus (a) costs and reasonable attorneys' fees under Haw.

Rev. Stat. §§ 480-13(a)(1) and 607-14 and (b) $2,700.~~-~~

~~2.     WM shall forthwith reconvey~~00 per month from July 2008 until she regains possession of the real property located at 43-1374 Hawaii Belt Road,

Paauilo, Hawaii County (TMK 4-3-018-006)("Mortgaged Property")~~;~~.

      2.     WM shall forthwith reconvey the Mortgaged Property to Plaintiff, subject to all valid liens that existed at the time of the foreclosure sale on December 2, 2005.~~-~~

~~3.~~

      3.     WM and Ameriquest are enjoined from otherwise transferring or encumbering the Mortgaged Property prior to reconveying it to Plaintiff.

2

Text Moved Here: 1

Injunction.  Plaintiff is entitled to an injunction requiring WM to reconvey the Mortgaged Property to the debtor, subject to all valid liens that existed at the time of the foreclosure, and restraining the defendants from transferring or encumbering the Mortgaged Property in the meantime.

End Of Moved Text

 debtor is entitled to recover  32.   The amount of costs and reasonable attorneys' fees under Haw. Rev. Stat. §§ 480-13(a)(1) and 607-14.  The parties shall proceedbe determined in accordance with LR 54.2 and 54.3.

24