# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>MARGERY KANAMU-<br>KALEHUANANI KEKAUOHA-<br>ALISA,<br><br>Debtor. | Case No. 05-01215<br>Chapter 7 |
| MARGERY KANAMU-<br>KALEHUANANI KEKAUOHA-<br>ALISA,<br><br>Plaintiff,<br>vs.<br><br>AMERIQUEST MORTGAGE<br>COMPANY; WM SPECIALTY<br>MORTGAGE LLC, WITHOUT<br>RECOURSE,<br><br>Defendants. | Adversary Proceeding No. 06-90041 |

## <u>AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The trial in this adversary proceeding was held on April 7, 9, 10, 14, and 15, 2008. Bradley R. Tamm and Lissa D. Shults represented the plaintiff and Tina L. Colman and Shellie Park-Hoapili represented the defendants. Based on the evidence, I make the following

# FINDINGS OF FACT

1.      In 1996, the debtor, Margery Kanamu-Kalehuanani Kekauoha-Alisa, and her husband (since deceased) purchased a home in Paauilo on Hawaii Island (the "Mortgaged Property").

2.      On September 23, 2002, the debtor executed a promissory note and mortgage (the "Mortgage") in favor of Ameriquest Mortgage Co. ("Ameriquest"). The Mortgage was recorded in the Bureau of Conveyances, State of Hawaii, and created a first mortgage lien on the Mortgaged Property.  (I will refer to the lender's rights under the note and Mortgage as the "loan.")

3.      Not later than April 6, 2005 (the record does not disclose the exact date), Ameriquest sold the loan to WM Specialty Mortgage LLC ("WM") and became WM's agent for the purpose of servicing the loan.  Subsequent to the sale, Ameriquest reorganized its operations, and one of its affiliates, AMC Mortgage Services, Inc. ("AMC"), undertook servicing of the loan.

        a.      Some of the evidence suggests that Washington Mutual Bank owned the loan at some point in time.  The weight of the evidence shows, however, that Ameriquest sold the loan directly to WM and that Washington Mutual Bank never owned it.  The references to Washington Mutual Bank appear to have crept in because Washington Mutual Bank is the manager of WM, a limited liability

2

company.

       b.    There was no evidence that the internal reorganization pursuant to which Ameriquest delegated the servicing duty to AMC relieved Ameriquest of its legal obligation to WM to service the loan.

4.    The debtor defaulted in her obligations under the Mortgage on eight occasions.   On the eighth occasion, in early 2005, the debtor was not able to cure her defaults quickly enough to avoid foreclosure.

5.    On April 6, 2005, Ameriquest took some initial steps in the foreclosure process.

       a.    Ameriquest (through AMC, purportedly acting as Ameriquest's "servicing agent") executed an "Assignment of Deed of Trust" in favor of "WM Specialty Mortgage LLC, Without Recourse."  The assignment purported to transfer "all beneficial interest" under a Deed of Trust executed by the debtor, and with the same date and recording information as the Mortgage.  The assignment was intended to document an absolute assignment of the mortgagee's interest under the Mortgage to WM.

       b.    Town & Country Title Services, Inc. ("T&C"), an affiliate of Ameriquest, mailed to the debtor and to the State of Hawaii Department of Taxation a document entitled "Notice of Mortgagee's Intent to Foreclose under

3

Power of Sale" (the "April 6 Notice"). The notice stated that WM, the holder of the Mortgage, intended to hold a foreclosure sale on May 13, 2005, at the flagpole fronting Hale Halewai in Kailua-Kona.

        c.      Also on April 6, 2005 T&C sent the April 6 Notice and the Assignment of Deed of Trust to Fidelity National Title with instructions to record them.

      6.      On April 7, 2005, T&C received from Fidelity National Title a litigation guarantee in favor of Ameriquest, as mortgagee. A litigation guarantee is a type of title insurance policy issued to facilitate a foreclosure action.

      7.      On April 8, 2005, immediately after T&C received the litigation guarantee, Ameriquest and its affiliates retraced their steps. T&C mailed another Notice of Intention to Foreclose under Power of Sale (the "April 8 Notice") to the debtor and the State of Hawaii Department of Taxation and sent it to Fidelity National Title for recording in the Bureau of Conveyances. This notice described Ameriquest, rather than WM, as the foreclosing mortgagee.

      8.      On April 8, 2005, Ameriquest did not own the loan. AMC elected to pursue foreclosure in the name of Ameriquest in order to avoid the delay and expense of obtaining a new litigation guarantee in favor of WM, the true owner of the loan.

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 323   Filed  09/03/08   Page 4 of 23

9.     The April 6 Notice and the assignment of mortgage were never recorded in the Bureau of Conveyances, posted on the Mortgaged Property, or published in a newspaper.  The April 8 Notice was recorded in the Bureau of Conveyances, posted on the Mortgaged Property, and published in a newspaper.

10.     On May 10, 2005, a few days before the scheduled foreclosure sale, the debtor filed a petition under chapter 13 of the Bankruptcy Code.

11.     AMC, "as loan servicer for Secured Creditor Ameriquest Mortgage Company," filed a proof of claim (and an amended proof of claim) in the bankruptcy case in respect of the loan.  Ameriquest was not the owner of the loan and was not a creditor of the debtor when these documents were filed.

12.     Fidelity National Agency Sales and Posting, Inc., apparently acting at the direction of T&C, retained an attorney to act as auctioneer.  In order to comply with the automatic stay, the auctioneer or another person with his law firm postponed the sale to June 17, August 26, September 2, September 23, and December 2, 2005.

13.     A legal secretary employed by the auctioneer's law firm was instructed to postpone the auction on September 23.  She went to the flagpole at Hale Halewai, the designated place of the auction, about ten or fifteen minutes before noon, the scheduled time of the auction, and stayed until about 12:25 p.m.

5

While she was there, she asked some of the people in the vicinity if they were attending the auction of the Mortgaged Property. All of the people she spoke to said they were not. She did not speak to everyone in the vicinity; there was another foreclosure auction scheduled at the same time, and she did not speak to anyone who seemed to be interested in the other auction. She never made an open, oral announcement to all those present of the date and time to which the auction was being postponed and she did not post or display such an announcement in written form. When asked at trial if she made a public announcement of the postponement, she testified that she did not.

14.     In the meantime, the court confirmed the debtor's chapter 13 plan on July 8, 2005. The plan provided for payment of the mortgage arrears through the plan and payment of post-petition mortgage payments outside the plan. The debtor failed, however, to maintain her post-petition mortgage payments.

15.     On November 1, 2005, "Ameriquest Mortgage Company, its Successors and Assigns," filed a motion for relief from the automatic stay to allow completion of the foreclosure. On that date, Ameriquest did not own the loan.

16.     The debtor's attorney in the bankruptcy case contacted the movant's attorney, a partner in the same law firm as the auctioneer, in an attempt to work out a plan to cure the defaults, but no agreement was reached.

6

17.     The notice of the motion unambiguously stated that all responses to the motion were due within twelve days.  The debtor did not oppose the motion. On November 18, 2005, several days after the expiration of the time for filing a response to the motion, the movant's counsel submitted to the court a proposed order granting the motion and informed the debtor's counsel that she had done so. The court entered the order on November 21, 2005.  The debtor did not seek reconsideration of or other relief from the order until after the trial of this adversary proceeding.

18.     At trial, the debtor's bankruptcy counsel testified that she did not file an opposition to the motion because, in her prior dealings with another attorney with the auctioneer's law firm, that attorney did not seek relief from the stay by default as long as they were attempting to negotiate a resolution.  There is no evidence, however, that the debtor's counsel complained about a violation of such a course of dealing prior to the trial of this case.  When the movant's counsel notified the debtor's counsel that she had submitted the order, the debtor's counsel did not object.  In any event, counsel's reliance on any such course of dealing was not reasonable.  The movant was entitled to the benefit of the deadline for objecting to the motion absent an express agreement to extend the deadline.

19.     The foreclosure auction took place on December 2, 2005.  The

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 323   Filed  09/03/08   Page 7 of 23

auctioneer made the only bid, on behalf of WM, in the amount of $147,606.17. This bid was made as a credit bid of the amount purportedly secured by the Mortgage, not a cash bid.

20.     On December 2, 2005, the fair market value of the Mortgaged Property was $300,000.00, and the amount of the indebtedness secured by the Mortgage was $144,219.17.  (The debtor proved that the amount of the indebtedness reflected in the credit bid was overstated because it included $100 of unsubstantiated expenses and did not reflect credits to which the debtor was entitled for a $2,000 postpetition payment and a $1,287 insurance premium refund.)

21.     On December 21, 2005, the debtor converted her case to chapter 7.

22.     The April 8 Notice stated that the quitclaim deed conveying the property to the successful bidder "shall be provided by Mortgagee within twenty-one (21) days after sale . . . ."  The quitclaim deed was dated December 21, 2005, and recorded on December 27, 2005.  In response to an interrogatory, Ameriquest and WM stated that the quitclaim deed was "delivered" on December 27, 2005.

23.     The quitclaim deed contains an internal inconsistency.  The preamble of the document identifies Ameriquest as the "foreclosing mortgagee" and the "Grantee" and WM as the "Grantor."  This is incorrect; the labels "Grantee" and

8

"Grantor" are reversed. Ameriquest signed the deed, however, as grantor. Further, Ameriquest did not own the Mortgage at that time.

24.    In January 2006, WM brought an ejectment action in state court against the debtor and the tenants of the Mortgaged Property. The debtor did not answer the complaint and did not respond to WM's motion for summary judgment. The state court issued a judgment of possession and writ of possession in favor of WM on April 11, 2006. The debtor's appeal of the state court's rulings is pending before the Hawaii Intermediate Court of Appeals. The debtor has incurred at least $12,000.00 of attorneys' fees and costs in the ejectment action and appeal.

25.    The fair rental value of the Mortgaged Property from April 2006 to date is $900 per month.

26.    The debtor suffered significant emotional distress as a consequence of her loss of the Mortgaged Property. She hoped to save the Mortgaged Property as a legacy from her late husband to her children, and the loss of this prospect was acutely and understandably painful. There is no question, however, that the Mortgage was in default and that the mortgagee was entitled to foreclose. The only question is whether the proper party foreclosed the Mortgage in the proper manner. If the mortgagee had fully complied with all applicable requirements, the debtor would have suffered the same emotional distress that she actually suffered.

9

There is no evidence that the mortgagee's errors in the foreclosure process, as opposed to the fact of the foreclosure itself, caused any additional emotional distress.

27. The defendants' misconduct was not reckless and does not evidence callous disregard for the law or the rights of others.

Based on the foregoing findings of fact, the court draws the following

## CONCLUSIONS OF LAW

### A. Jurisdiction

1. The bankruptcy court has jurisdiction of the parties and the subject matter.

    a. The defendants do not object to personal jurisdiction.

    b. The defendants contended in their trial brief that the court lacked subject matter jurisdiction because the bankruptcy trustee, not the debtor, owned the claims asserted in this adversary proceeding. At the beginning of the trial, the trustee and the debtor announced that they had reached an agreement (subject to court approval) pursuant to which the trustee would authorize the debtor to assert the claims. The defendants' counsel acknowledged that this agreement resolved the issue of subject matter jurisdiction. The court subsequently approved the agreement.

10

c.     This is a core proceeding.  28 U.S.C. §§ 157(b)(2)(A), (E), (K), (O).

**B.     Preclusion**

2.     The debtor is entitled to proceed despite the judgment against her in the state court ejectment action.

a.     Under Hawaii law, a judgment has no preclusive effect until any appeals are decided.  Morisada Corp. v. Beidas, 939 F.Supp. 732, 737 n. 3 (D. Haw. 1995); Glover v. Fong, 42 Haw. 560, 574 (Haw.Terr. 1958).  Therefore, the state court's judgment has no issue preclusion or claim preclusion effects at this time.

b.     The interest of comity is not sufficient, in the circumstances of this case, to justify deference to the judgment in the ejectment action.

i.     Although not conclusive, it is relevant that the state court's judgment was, in effect, a default judgment against a bankrupt defendant.

ii.     The complaint in this adversary proceeding asserts claims under federal law, some of which are within the exclusive jurisdiction of the bankruptcy court (e.g., the claims for violation of the automatic stay, Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1084 (9th Cir. 2000)).

c.     When the state court entered judgment against the debtor, the

11

estate, and not the debtor, owned the claims and defenses which the debtor now asserts. Although the debtor acquired the right to assert those claims in time for the trial of this case, she did not have those claims when the state court entered judgment against her. The debtor cannot be faulted, and cannot be subjected to preclusion or other prejudice, for failing to assert claims that she did not own.

### C. Claims Remaining for Decision

3. The debtor's amended complaint alleges violation of the automatic stay (Counts 1 though 3), breach of contract (Count 4), unfair and deceptive trade practices (Count 5), violation of the Hawaii Uniform Fraudulent Transfer Act, Haw. Rev. Stat. ch. 651C (Count 6); injunctive relief (Count 7), turnover of property of the estate pursuant to 11 U.S.C. §§ 542 and 543 (Count 8), and avoidance of sale or transfer (Count 9), and violation of the automatic stay by WM (Count 11). (There is no Count 10 because I denied leave to add that count.)

4. The court granted summary judgment for the defendants on Counts 1, 2 and 3 on December 15, 2006.

5. The court granted summary judgment for the defendants on Count 6 (fraudulent transfer) on June 15, 2007.

6. The debtor moved (in her written closing argument) to conform the allegations of the complaint to the proof. I will deny this motion as unnecessary.

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 323   Filed 09/03/08   Page 12 of 23

All of the evidence and theories offered by the plaintiff are within the scope of the claims pled.

###### D.    Violation of Nonjudicial Foreclosure Statute

7.    Ameriquest elected to foreclose the Mortgage under Part I of Haw. Rev. Stat. ch. 667.  The principal provision, section 667-5, states that when a mortgage contains a power of sale, the mortgagee may give notice of its intention to foreclose by publication of three successive weekly notices in a newspaper of general circulation in the same county as the property to be sold, with the last publication at least 14 days before the date of sale.  The mortgagee also must "give such notices and do all such acts as are authorized or required by the power contained in the mortgage."

8.    Under section 667-5, any properly noticed sale "may be postponed from time to time by public announcement made by the mortgagee or by some person acting on the mortgagee's behalf."

9.    The phrase "public announcement" is not defined in Haw. Rev. Stat. ch. 667.  The dictionary defines "announce" as "to make known publicly: PROCLAIM" and "announcement" as " public notification or declaration." Merriam-Webster's Collegiate Dictionary 47 (10th ed. 2001).

10.    No "public announcement" of postponement was made on September

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 323   Filed  09/03/08   Page 13 of 23

23, 2005. The legal secretary who appeared to postpone the auction made no oral or written announcement to the general public. Instead, she spoke separately to some of the people in the area and did not speak to others who she did not think were there for her auction. She was attempting to do the right thing, but she did not comply with the statutory requirement.

11. The debtor argues that the foreclosing mortgagee violated the statute by tardily delivering the quitclaim deed to the purchaser.

    a. The statute does not impose a deadline for the conveyance of the property after the sale. (Section 667-5 requires the mortgagee to record the notice of sale and an affidavit within thirty days after the sale, but says nothing about a conveyance document.)

    b. Section 667-5 does require the mortgagee to comply with the terms of the power of sale contained in the mortgage. In this case, section 22 of the Mortgage requires the mortgagee to "sell the Property . . . under the terms specified in the notice of sale," and, as noted above, the April 8 Notice specified that the mortgagee would "provide" the quitclaim deed within twenty one days after the sale.

    c. Neither the Mortgage nor the April 8 Notice define the word "provide." The interrogatory asked the defendants to state the date on which the

14

deed was "delivered."  "Delivery" is a term of legal art; "provide" is not; and I have no basis to determine whether the two terms are synonymous.

        d.    The debtor has failed to establish that the mortgagee violated the statute by providing the quitclaim deed too late.

        e.    The debtor also argues that, because of the inconsistent identification of the "Grantor" and the "Grantee" in the quitclaim deed, no proper quitclaim deed has ever been delivered.  I am not convinced that the error in the deed entitles the debtor to any relief.  A scrivener's error of this nature could not have an adverse effect on a mortgagor.  See Steward v. Good, 51 Wash.App. 509, 515, 754 P.2d 150, 153-54 (1988).  In any event, because the mortgagee violated the statute by failing to give proper notice of the postponed sale, I need not reach this issue.

12.    The debtor argues that the mortgagee violated the statute by accepting an improper credit bid.  I have found that WM was the owner of the loan and the Mortgage.  Under the terms of the April 8 Notice, therefore, WM was entitled to make a credit bid.

### E.    Breach of Mortgage Contract

13.    Under Hawaii law, promissory notes and mortgages are contracts. Beneficial Hawaii, Inc. v. Kida, 96 Hawaii 289, 312, 30 P.3d 895, 918 (2001).

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 323   Filed  09/03/08   Page 15 of 23

14.     Ameriquest was contractually bound to comply with section 22 and other applicable provisions of the Mortgage.  When Ameriquest assigned the Mortgage to WM, WM also became contractually bound by the Mortgage, and Ameriquest was not released from its obligations under the Mortgage.

15.     Section 22 of the Mortgage required the mortgagee to comply with Applicable Law, including Hawaii Rev. Stat. § 667-5.  Ulrich v. Security Inv. Co., 35 Hawaii 158, 170-71 (1939) ("Where a power of sale is contained in a chattel mortgage the covenant is implied that, if exercised, the mortgagee will execute the power consistent with his legal duties in the premises.")  The defendants' violations of section 667-5 therefore also constitute breaches of contract.

16.     Section 14 of the Mortgage permits the lender to charge the borrower attorneys' fees incurred in connection with the borrower's default.  Hawaii law gives the borrower a reciprocal right to recover attorneys' fees in the event that the borrower is the prevailing party in litigation against the lender.  Haw. Rev. Stat. § 607-14; In re Hoopai, 369 B.R. 506, 510 (B.A.P. 9th Cir. 2007).

### F.     Avoidance of Foreclosure Sale

17.     The defendants' failure to comply strictly with the terms of the power of sale invalidates the foreclosure sale.  Silva, 5 Haw. at 263 ("To effect a valid sale under power, all the directions of the power must be complied with . . . and

16

this is unquestioned.").

18.    Hawaii law does not require a mortgagor to show ability to cure in order to set aside a sale that did not comply with the terms of the mortgage or section 667-5.  The notice requirement in section 667-5 is intended, not only to allow the mortgagor an opportunity to cure, but also to attract as many prospective purchasers as reasonably possible in order to maximize the return of the mortgagor's equity, if any.

19.    Accordingly, the debtor is entitled to an order setting aside the foreclosure sale.

### G.    The Automatic Stay

20.    The November 21, 2005, order granting relief from the stay ran in favor of any holder of the Mortgage, regardless of whether such holder was specifically identified in the order.  Reusser v. Wachovia Bank, N.A., 525 F.3d 855 (9th Cir. 2008).

21.    Accordingly, WM did not violate the automatic stay when it exercised its rights with respect to the Mortgage.

### H.    Unfair and Deceptive Trade Practices

22.    Haw. Rev. Stat. § 480-2(a) forbids "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

17

23.    Mortgage loans made by financial institutions to consumers are within the scope of section 480-2.  Hawaii Community Federal Credit Union v. Keka, 94 Hawaii 213, 227, 11 P.3d 1, 15 (2000).

24.    Section 480-2 is a remedial statute which "must be liberally construed in order to accomplish the purpose for which it was enacted."  Keka, 94 Haw. at 229, 11 P.3d at 17.  Chapter 480 creates "a mechanism for abating practices that potentially injure consumers in general."  Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawaii 309, 317, 47 P.3d 1222, 1230 (2002) (emphasis added).

25.    The failure properly to announce a postponement of a nonjudicial foreclosure sale is an "unfair act or practice" within the meaning of section 480-2.

a.    An act or practice is unfair "when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  State of Hawaii ex. rel. Bronster v. United States Steel Corp., 82 Haw. 32, 51 (1996)(quoting Rosa v. Johnston, 3 Haw.App. 420, 427 (1982)).

b.    There is an established public policy in favor of strict compliance with the notice requirements of the nonjudicial foreclosure statute.  See Ulrich, 35 Haw. at 172, Silva v. Lopez, 5 Haw. 262, 263-64 (1884).

c.    The failure properly to announce a postponement of a

18

foreclosure auction is "substantially injurious to consumers" in that it tends to deprive consumer/mortgagors of the benefit of their property and to deprive consumer/bidders of the ability to bid in foreclosure sales.

26.     The failure properly to announce a postponement of a nonjudicial foreclosure sale is a "deceptive act or practice" under section 480-2.

a.     A deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material. Courbat v. Dahana Ranch, Inc., 111 Haw. 254, 262 (2006). A representation, omission or practice is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." Id. The test "is an objective one, turning on whether the act or omission 'is likely to mislead consumers,' . . . as to information 'important to consumers' in making a decision regarding the product or service." 111 Haw. at 262 (citations omitted.)

b.     The failure to give a proper postponement announcement is an "omission" or "practice."

c.     The failure to give a proper postponement announcement is likely to mislead a consumer acting reasonably under the circumstances. A

19

reasonable consumer (either a mortgagor or a prospective bidder) who appeared at the scheduled date and time of a foreclosure auction at which no public announcement of postponement was made would probably assume that the foreclosure had been canceled altogether and therefore would be deprived of the opportunity to participate in the postponed auction.

        d.     This omission or practice is material. Proper notice of the actual date of a foreclosure auction is essential to ensure that foreclosed properties bring adequate prices and that the public has an appropriate opportunity to bid.

      27.     Although a consumer must prove injury in fact in order to recover damages under section 480-2, the test for liability is an objective one. For example, in order to show that a particular act or practice is deceptive, the consumer need not show that he or she was deceived, but rather that a reasonable consumer would have been deceived. Therefore, for purposes of establishing the defendants' liability, it is not relevant that the debtor did not appear at the flagpole on September 23, 2005, when the public announcement of postponement should have been made.

### I.     Turnover

      28.     The debtor alleges that the amount actually secured by the Mortgage on the date of the auction was less than the amount of WM's credit bid, and that

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 323   Filed 09/03/08   Page 20 of 23

WM must turn over the difference to the trustee in cash.  Because the foreclosure sale is void, WM's bid is inoperative and there is no basis to require WM to pay any part of that bid in cash.  Therefore, the turnover count shall be dismissed as moot.

### J.    Remedies

29.    <u>Breach of Contract</u>.

      a.    Because Ameriquest and WM failed to comply with the nonjudicial foreclosure statute and the power of sale contained in the Mortgage, the foreclosure sale is void.

      b.    The debtor has elected to forego any recovery of monetary damages under her breach of contract claims.

      c.    The debtor is entitled to recover reasonable attorneys' fees and costs under Haw. Rev. Stat. § 607-14.

30.    <u>Unfair or Deceptive Trade Acts or Practices</u>.

      a.    Under Haw. Rev. Stat. § 480-13(b)(1), the debtor is entitled to "be awarded a sum not less that $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater . . . ."  For purposes of this section, the debtor's damages consist of the value of her lost equity in the Mortgaged Property ($155,780.83), the fair rental value of the Mortgaged Property ($900 per month for

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 323   Filed  09/03/08   Page 21 of 23

26 months, or $23,400, plus an additional $900.00 per month from July 2008 until the debtor regains possession of the Mortgaged Property) and the attorneys' fees she incurred in the ejectment action in an effort to defend against the invalid foreclosure ($12,000), for total damages of $191,180.83 (plus $900 per month as set forth above) and a total treble damages amount of $573,542.49 (plus $2,700 per month as set forth above).

b.     The debtor is not entitled to an overlapping recovery on her various claims. Avoidance of the foreclosure sale plus an award of treble damages would give the debtor a four-fold recovery of her lost equity in the Mortgaged Property – once in kind, by way of the return of the Mortgaged Property to her, and three more times in the form of money damages – rather than the three-fold recovery permitted by Haw. Rev. Stat. § 480-13(b)(1). Therefore, the money judgment will be in the amount of $417,761.66 (plus $2,700 per month), which equals $573,542.49 (the total treble damages calculated above) minus $155,780.83 (the value of the equity in the Mortgaged Property, which she will recover "in kind" by avoidance of the foreclosure sale).

c.     The debtor is entitled to recover costs and reasonable attorneys' fees under Haw. Rev. Stat. § 480-13(b)(1).

d.     No damages for emotional distress will be awarded. The debtor

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 323   Filed 09/03/08   Page 22 of 23

failed to prove that the defendants' breaches (as opposed to the loss of the Mortgaged Property) caused her to suffer emotional distress. Further, emotional distress damages are not recoverable under Haw. Rev. Stat. § 480-13. Zanakis-Pico, 98 Haw. at 319, 47 P.3d at 1232.

e. There will be no punitive damages because the debtor did not establish the requisite degree of culpability and because a plaintiff cannot recover both treble damages under section 480-13 and punitive damages. Zanakis-Pico, 98 Haw. at 319, 47 P.3d at 1232.

31. Injunction. Plaintiff is entitled to an injunction requiring WM to reconvey the Mortgaged Property to the debtor, subject to all valid liens that existed at the time of the foreclosure, and restraining the defendants from transferring or encumbering the Mortgaged Property in the meantime.

32. The amount of costs and reasonable attorneys' fees shall be determined in accordance with LR 54.2 and 54.3.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **09/02/2008**

23