| | |
|---|---|
| In re:<br><br>MARGERY KANAMU-<br>KALEHUANANI KEKAUOHA-<br>ALISA,<br><br>                      Debtor. | Case No. 05-01215<br>Chapter 7 |
| MARGERY KANAMU-<br>KALEHUANANI KEKAUOHA-<br>ALISA,<br><br>                      Plaintiff,<br>   vs.<br><br>AMERIQUEST MORTGAGE<br>COMPANY; WM SPECIALTY<br>MORTGAGE LLC, WITHOUT<br>RECOURSE,<br><br>                      Defendants. | Adversary Proceeding No. 06-90041<br><br><br><br><br>Related Docket No.: 467, 468 |

**MEMORANDUM OF DECISION ON MOTIONS FOR
(1) ENTRY OF SECOND AMENDED FINDINGS OF FACT AND
CONCLUSIONS OF LAW AND (2) ATTORNEYS' FEES**

On September 3, 2008, after extensive litigation, a bench trial, and

postjudgment motions, I entered findings of fact and conclusions of law (dkt. no.

323) and a final judgment (dkt. no. 324). I ruled that the defendants ("Lenders")

failed to give a proper public announcement of a postponement of a nonjudicial mortgage foreclosure sale. I held that this violated the applicable foreclosure statute and the contract between the mortgagee and the mortgagor, and that it constituted an unfair or deceptive act or practice in violation of Haw. Rev. Stat. § 480-2. I invalidated the foreclosure sale, enjoined the Lenders to reconvey the property to the plaintiff mortgagor ("Debtor") subject to the mortgage, and awarded the Debtor damages of $417,761.66 plus postjudgment rental value, attorneys' fees, and costs. The damages basically consisted of the value of the Debtor's equity in the property, the fair rental value of the property while the Debtor was wrongfully deprived of it, and the attorneys' fees incurred by the Debtor in the Lender's ejectment proceeding, trebled in accordance with Haw. Rev. Stat. § 480-13.

The Bankruptcy Appellate Panel reversed the judgment. In re Kekauoha-Alisa, 407 B.R. 442 (B.A.P. 9th Cir. 2009) On further appeal, the Ninth Circuit Court of Appeals affirmed the avoidance of the foreclosure sale and my determinations that the Lenders violated the foreclosure statute, the mortgage contract, and Haw. Rev. Stat. § 480-2, but remanded the case for a redetermination of damages and attorneys' fees. In re Kekauoha-Alisa, 674 F.3d 1083 (9th Cir. 2012).

2

The court of appeals noted that I did not make an explicit finding that the Lenders' conduct caused the damages I enumerated. Id. at 1092-93. The court went on to say that a finding of causation on the existing record would be clearly erroneous. Id. at 1093. The court remanded the case "because the factual record may not be complete . . . ." Id. The court stated the question for decision on remand:

> Therefore, on remand the bankruptcy court must determine the difference, if any, between Debtor's situation had Lenders properly postponed the foreclosure sale and Debtor's actual situation, given that the sale was improperly postponed. This framing properly narrows the inquiry to the damage caused by Lenders' deceptive postponement.

Id.

The court also vacated the award of attorneys' fees and "remand[ed] for calculation of reasonable attorneys' fees in light of our remand of the damages-causation issue in Debtor's HRS § 480-13 claim." Id. The court held that I could, in my discretion, consider a settlement offer made by the Lenders early in the litigation, and that the 25% limit of Haw. Rev. Stat. § 607-14 applies to any attorneys' fees allotted to the Debtor's breach of contract claims. Id. at 1093-94.

In a separate order, the court of appeals authorized me to determine whether

and in what amount fees should be allowed respecting the appeal.

The Debtor has filed two motions to resolve the remanded issues.

**I.     Damages**

In the first motion (dkt. no. 468), the Debtor argues that I should find, based on the existing record, that the Lenders' improper postponement caused all of the damages I originally enumerated. (At the hearing on the motions, the Debtor declined my offer of an opportunity to provide additional evidence.) I cannot agree with this argument, for two reasons.

First, it flies in the face of the court of appeals' decision that a finding of causation on the existing record would be clearly erroneous. Under the law of the case doctrine, I can deviate from the court of appeals' ruling only in limited circumstances.

> Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case. . . . We have recognized exceptions to the law of the case doctrine, however, where (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.

Gonzalez v. Arizona, 677 F.3d 383, ___ n. 4 (9th Cir. 2012) (internal citations and quotation marks omitted). For the reasons set out in the next paragraph, I am not

4

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 482   Filed  07/26/12   Page 4 of 14

convinced that the court of appeals committed clear error.[1] There is no intervening controlling authority and there has been no subsequent trial. Even though the law of the case doctrine is discretionary, <u>U.S. v. Lummi Indian Tribe</u>, 235 F.3d 443, 452 (9th Cir. 2000), I see no reason to overrule the court of appeals.

Second, having reviewed the record again, I now think that the improper notice of postponement did not cause the Debtor to lose the value of the equity in her property. The defective postponement did not extinguish the Debtor's debt to the Lenders, discharge the lien of the mortgage, or preclude the Lenders from foreclosing. It means only that the Lender must renotice the foreclosure for a later date. Any damages flowing from the fact of the foreclosure are not compensable, because the Lender unquestionably had (and still has) the right to foreclose. The only compensable damages are those caused by the wrongful postponement of the foreclosure -- in other words, damages caused by the fact that the Lenders took ownership and possession of the Debtor's property before the Lenders were entitled to do so.

Returning to the court of appeals' framing of the issue, I must first consider what would have happened if, on September 23, 2005, the Lenders had properly

---

[1] In this case, the "clear error" analysis makes the head spin. I would have to decide that the court of appeals committed clear error when it decided that I would have committed clear error if I had made a factual finding that I did not make.

5

given notice of a postponement of the auction to December 2, 2005, and then compare that to what actually happened.  There are only a few possibilities.

    1.    Before December 2, 2005, the Debtor might have found enough money to cure her default and stop the foreclosure.  This scenario is highly unlikely.  Before the bankruptcy, the Debtor defaulted and cured the default eight times. She filed the bankruptcy because she could not accomplish that feat a ninth time.  She successfully proposed a chapter 13 plan that would have cured the default but was unable to maintain her plan payments. After the automatic stay was lifted, she briefly attempted to negotiate a cure (plaintiff's trial ex. 40) but was unable to come up with the necessary money (plaintiff's trial ex. 86).  There is no reason to believe that she would have had greater success in this effort if the Lenders had given a proper postponement notice, rather than an improper postponement notice, on September 23, 2005.

    2.    Before December 2, 2005, the Debtor might have found a buyer for the property.  This outcome is also highly unlikely.  The Debtor originally did not want to sell the property.  She viewed it as a legacy from her late husband for her six children.  Although the Debtor's bankruptcy counsel mentioned the possibility of a sale in an email to the Lenders' bankruptcy counsel (plaintiff's trial ex. 38), and the Debtor testified that she had contacted a real estate agent (plaintiff's trial

U.S. Bankruptcy Court - Hawaii   #06-90041　 Dkt # 482　 Filed  07/26/12　 Page 6 of 14

ex. 86), there is no evidence that she made any serious effort to sell the property at any time and there is no reason to believe that she could have sold the property by December 2, 2005 if the Lenders had given proper notice of the postponement on September 23, 2005.

    3.    Before December 2, 2005, the Debtor might have found a lender to refinance the mortgage. This scenario is equally unlikely. There is no evidence that she seriously sought a new loan or that she was likely to get one given her financial condition and track record of defaults.

    4.    The foreclosure sale would have been held on December 2, 2005, and the result would have been the same: no one other than the Lenders appeared, and the Lenders' credit bid was the highest and only bid. This is the most likely scenario. September 23, 2005, was the fourth properly noticed date of the foreclosure sale. One person appeared at the first auction, but did not appear again at the second or third auction date, both of which were properly noticed. (Plaintiff's trial ex. 59.) There is no reason to believe that, if a proper postponement notice had been given, anyone would have appeared at the December 2, 2005 auction and bid more than the Lenders' credit bid, let alone the full fair market value of the property.

    At trial, the Debtor's bankruptcy counsel testified that, if she had been

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 482   Filed  07/26/12   Page 7 of 14

notified of the next auction date after the stay was lifted, she would have called the Debtor's trial counsel, who would in turn have contacted Albert Joy, a real estate professional. Mr. Joy testified that he was in the business of investing in (and finding investors for) properties in foreclosure, and that he could have helped the Debtor stop the foreclosure and realize some of the value of her equity in the property.

Even putting aside the fact that the Debtor referred to this testimony in her argument to the court of appeals but the court of appeals found the record insufficient to support a finding of causation, this testimony is problematic. The Debtor's bankruptcy counsel knew that the Debtor was in default of her mortgage payments and her chapter 13 plan payments; she did not oppose the Lenders' motion for relief from the stay; and she knew that the court granted the motion. Even if counsel did not know the exact date of the foreclosure sale, she knew (or should have known) that it was likely imminent. Nevertheless, she did not call the Debtor's trial counsel, who of course did not call Mr. Joy. There is no reason to think that counsel would have made the call if the Lenders gave a proper notice of postponement on September 23, 2005.[2]

---

[2] While the Debtor's counsel was attempting to negotiate a cure, the Lenders' bankruptcy counsel said that her firm did not represent the Lenders in the foreclosure. Plaintiff's trial ex. 38. This was at best half true; the law firm may

8

The Debtor argued, at the hearing on the motion, that there should be a presumption that, if a proper notice were given, the property would have sold at the postponed auction for its full fair market value. The Debtor cites no authority that creates such a presumption, and even if there were such a presumption, the evidence rebuts it.

Thus, if the Lenders had given a proper notice of postponement on September 23, 2005, the only likely outcome is that the property would have been sold at the continued auction on December 2, 2005, for the full amount of the Lenders' claim and no more. The improper postponement therefore did not cause the Debtor to lose the value of the equity in her property.

The Debtor is entitled, however, to recover the fair rental value of the property from the date that she wrongfully lost ownership of the property pursuant to the invalid foreclosure sale until the Lenders restore title to her and the attorneys' fees she incurred in the ejectment case. Because the Lenders failed to give proper notice of the postponement, the foreclosure sale was invalid, and the

---

not have represented the Lenders as legal counsel in the foreclosure, but there is no dispute that the Lenders hired the firm to act as auctioneer in the nonjudicial foreclosure sale, and that a secretary employed by the firm botched the notice of postponement. This misstatement is troubling. There is no evidence, however, that this misstatement was a knowing effort to deceive, that the Debtor's bankruptcy counsel acted or failed to act in reliance on it, or that the Lender's counsel gave false information about the date of the continued foreclosure sale.

9

Lenders wrongfully took title and wrongfully prosecuted the ejectment action. Merely undoing the sale would not compensate the Debtor for the lost use value of the property in the meantime or the expense of the ejectment case. I find that the improper notice of postponement caused the Debtor to suffer damages in an amount equal to the fair rental value of the property, which I have found to be $900 per month, from April 2006 (when the Debtor wrongfully lost title to and possession of the property) until the date that the Lenders restore title and possession to the Debtor, plus $12,000 of attorneys' fees in the ejectment case. Because the court of appeals agreed that the Lenders engaged in a deceptive practice within the meaning of Haw. Rev. Stat. 480-2, this amount will be trebled under Haw. Rev. Stat. 480-13. This amounts to $238,500 plus $2,700 per month from August 2012.

The Debtor implies that reducing the damages award would condone improper nonjudicial foreclosures and would not be sufficient in light of the Lenders' wrongful conduct. There are two responses. First, the amended damages award, after trebling, is still substantial. Second, the law allows damage awards only in the amount which will compensate the plaintiff for the losses caused by the wrongdoing. (After trial, I rejected the Debtor's claim for punitive damages, and the court of appeals did not alter this decision.) The Lenders in this case disobeyed

the law, but awarding the Debtor more damages than the Lenders' misconduct caused would also disobey the law.

The Debtor's counsel is directed to submit an amended final judgment in conformity with this decision, pursuant to LBR 9072-1.

II.   Attorneys' Fees

The Debtor's second motion (dkt. no 467) argues that I should award the same amount of fees as I previously awarded plus reasonable fees for appellate work.

    A.   Effect of Settlement Negotiations

I hold that the fees awarded to the Debtor should not be reduced on account of the settlement discussions that took place during the litigation. The rejection of a reasonable settlement offer may indicate that the fees incurred thereafter were not reasonable. Ingram v. Oroudjian, 647 F.3d 925, 927 (9th Cir. 2011). Before the trial, the only settlement which the Lenders indicated a willingness to consider would have required the Debtor to pay off the Lenders' claim as of the date of the sale, in exchange for which the Lenders would have reconveyed the property to the Debtor and released the mortgage. This was closer to a demand for unconditional surrender than a settlement offer. It gave no value to the Debtor's claims for lost rental value, treble damages, and attorneys' fees and costs. The

11

Debtors' decision to decline those terms was reasonable, and the potential of a settlement on those terms does not render unreasonable the fees incurred thereafter.

The court of appeals does not mention another missed opportunity to settle the case. After the trial, with the assistance of a mediator, the parties agreed on most of the terms of a settlement that would have provided $800,000 to the Debtor. The Lenders filed a motion to enforce the settlement, but I held that there was no enforceable settlement. As I noted at the time, both parties are responsible for the failure of the settlement. The Lenders' counsel failed to deliver draft settlement documents in a timely fashion and included in the tardy draft a material provision on which the parties had not agreed and which the Debtor reasonably rejected; and the Debtor and her counsel were unreasonably intransigent in refusing to extend the deadline for delivery of the settlement draft. Because both parties bear substantial responsibility for the failure of this highly advantageous settlement, I will not penalize either party by allowing the settlement to influence the award of attorneys' fees.

B.  Fees for Assumpsit Claims

The court of appeals rejected the Debtor's argument that Haw. Rev. Stat. § 607-14 does not limit the fees she can recover on account of her breach of

12

contract claims. The court noted that the exception created in Food Pantry, Ltd., v. Waikiki Business Plaza, Inc., 575 P.2d 869, 880 (Haw. 1978), applies only when money damages are neither sought nor awarded. The court also cited DFS Group L.P. v. Paiea Props., 131 P.3d 500, 504 n.5 (Haw. 2006), in which the Hawaii Supreme Court held that "the *judgment* serve[s] as the basis for calculating the twenty-five percent cap."

To recalculate the attorneys' fees, I begin with the total amount of fees claimed. The court of appeals did not disturb my determination of the reasonable hourly rates charged and the reasonable hours expended.

Next, I must allocate the Debtor's fees between the work done on claims in the nature of assumpsit, which are subject to the twenty-five percent cap of Haw. Rev. Stat. § 607-14, and claims under Haw. Rev. Stat. § 480-2, which are not subject to a percentage cap under Haw. Rev. Stat. § 480-13. In my original award of attorneys' fees (dkt. no. 325), I allocated the fees equally between the Debtor's assumpsit and nonassumpsit claims. The court of appeals did not disturb this ruling and neither party argues that I should modify it.

Third, I must apply the percentage limit of section 607-14 to the share of the fees allocated to the breach of contract claims. The Debtor expressly elected to recover the property in lieu of monetary damages on her assumpsit claims.

13

Therefore, there will be no money judgment on the assumpsit claims, and section 607-14 and the DFS case require me to allow no fees on those claims.

Last, I must consider whether to allow fees for the appellate stages of this litigation. The Lenders do not deny that fees are allowable for the appellate litigation just as they are allowable for the trial phase. Therefore, I am inclined to award half of the reasonable amount of fees incurred during the appellate process.

The Debtor is directed to submit an order allowing pre-appellate attorneys' fees and costs in accordance with this decision and to present her request for appellate fees and costs in conformity with LBR 7054-2.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 07/26/2012

14

U.S. Bankruptcy Court - Hawaii   #06-90041   Dkt # 482   Filed 07/26/12   Page 14 of 14